UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA,                    :

                    -v.-                     :              12 Cr. 934 (RA)

FENG LING LIU, et al.                        :

                    Defendants.              :
------------------------------------------------------x


**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO DEFENDANTS' PRETRIAL MOTIONS**


                                         PREET BHARARA
                                         United States Attorney
                                         Southern District of New York
                                         One St. Andrews Plaza
                                         New York, New York 10007

Brian R. Blais
Robert L. Boone
Assistant United States Attorneys
- Of Counsel -

## PRELIMINARY STATEMENT

Defendant Feng Ling Liu moves to suppress evidence recovered in a search of the law firm Moslemi and Associates, Inc., that was conducted pursuant to a search warrant.  *See* Mem. of Law in Supp. of Liu's Pre-Trial Motions ("Liu Mem.") at 6.  Liu asserts that the evidence should be suppressed because the warrant authorizing the search was lacking in probable cause. *Id.*  Defendant Vanessa Bandrich moves to suppress evidence recovered in a search of the law firm Bandrich and Associates, Inc., that was also conducted pursuant to a search warrant.  *See* Def. Vanessa Bandrich's Mem. of Law ("Bandrich Mem.") at 1.  In addition to asserting that the warrant lacked probable cause, Bandrich also asserts that the fruits of the search should be suppressed because seized information covered by the attorney-client privilege was reviewed using an allegedly inadequate procedure.  *Id.* at 4-7.  Defendant Shuran Liu joins in Bandrich's motion to suppress the fruits of the search of Bandrich and Associates.

Defendants' motions to suppress the evidence recovered in the search of the Moslemi and Bandrich law firms should be denied.  First, the warrants were supported by sufficient probable cause that the searches would yield fruits of criminal activity.  Second, even if the Court were to find insufficient probable cause to support issuance of the warrants, the evidence recovered in the searches should nonetheless not be suppressed because the law enforcement officers conducting the searches relied in good faith on the validity of the warrants.  Finally, the evidence seized in the search of the Bandrich law firm should not be suppressed because allegedly attorney-client privileged materials were reviewed as part of the search.  Defense counsel waived any objection to the Government's search procedure by failing to object to the proposed search procedure before such a search was conducted.  In any event, the procedure used by the

Government to review potentially attorney-client privileged information was not legally inadequate.

Defendant Feng Ling Liu also seeks a bill of particulars identifying the names of the asylum applicants for whom she and others helped fabricate stories of persecution in aid of their asylum applications.  Liu Mem. at 6-7.  Defendant Shuran Liu joins in Feng Ling Liu's motion. Defendant Yuchang Miao, a/k/a "David", seeks a bill of particulars identifying which asylum applicants he interviewed and what overt acts he committed in furtherance of the conspiracy. Miao Mem. at 1.  Both defendants' requests should be denied.  The Government has provided more than enough information needed for the defendants to prepare a defense and, as a matter of law, the defendants are not permitted to compel the disclosure of the information they seek through a bill of particulars.

## RELEVANT FACTS

On December 18, 2012, the Indictment in this matter was unsealed.  The Indictment alleges, *inter alia*, that the defendants worked at two law firms that assisted Chinese immigrants in crafting fraudulent asylum applications so that these immigrants could obtain asylum status and remain in the United States.  Indictment ¶ 20.  Defendant Feng Ling Liu was a lawyer who operated a law firm located at 2 East Broadway in Manhattan.   Indictment ¶ 21.   The firm, which specialized in immigration law, was originally known as the Law Offices of Feng Ling Liu, but later changed its name in approximately 2009 to Moslemi and Associates, Inc.  *Id.*  In approximately 2010, Liu arranged for one of the lawyers working at the Moselmi firm, Vanessa Bandrich, to open a new firm, Bandrich and Associates, Inc., which was located at 11 East Broadway in Manhattan.  Indictment ¶ 22.

3

On December 17, 2012, Magistrate Judge Sarah Netburn issued two search warrants –
one for the Moslemi law firm and one for the Bandrich law firm.[1]  Searches pursuant to these
warrants were conducted on December 18, 2012.  The affidavits accompanying the search
warrants detailed the procedure that the Government would use to search materials seized during
the law firm searches.  *See* Moslemi Aff. ¶ 17 and Bandrich Aff. ¶ 17 (collectively, "Affs.").
Specifically, all seized documents were reviewed by a "filter agent" from the FBI who was not
part of the investigating team.  Affs. ¶ 17a.  Only those materials containing indicia of fraud,
pertaining to the filing of false asylum applications, or otherwise constituting evidence,
contraband, fruits or instrumentalities of the offense were forwarded by the filter agent to the
investigating and prosecution team.  Affs. ¶ 17b.  All other materials were either returned to the
searched premises or, if the document was a copy, destroyed.  Affs. ¶ 17c.

At the initial pretrial conference in this matter, which took place on January 3, 2013, the
Government re-emphasized the protocol that it would use to review the materials seized pursuant
to the two law firm search warrants.  *See* Transcript of January 3, 2013 Pretrial Conference
("Tr.") at 13-14.  The Government agreed to provide copies, by the close of business on the day
following the conference, of the warrant affidavits, which as noted above spelled out in detail the
review procedure to be utilized by the Government.  The Government agreed to do this to "put
counsel in the best position if they take issue with the procedure that's spelled out therein to raise
the issues and raise it sooner than later."  Tr. 13.  No defense counsel offered any objection to
that proposed course of action.  The Government provided the warrant affidavits to defense
counsel in compliance with the schedule agreed upon in the conference.  No defense counsel

---

[1] The Moselmi warrant, and the supporting affidavit, are attached as Exhibit 2 to the Affirmation of Paul
Shechtman (Docket Entry 79).  The Bandrich warrant, and the supporting affidavit, are attached as
Exhibit 2 to the Defendant Vanessa Bandrich's Memorandum of Law (Docket Entry 85).

offered any objection to the proposed review procedure at that time, or at any point before the review of the seized documents began.

## ARGUMENT

I.      **THE COURT SHOULD DENY DEFENDANTS' MOTIONS TO SUPPRESS**

      A.      **The Search Warrants Were Supported By Sufficient Probable Cause**

            1.      <u>Applicable Law</u>

Probable cause is a "commonsense, nontechnical" concept that is determined by "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas* v. *United States*, 517 U.S. 690, 695 (1996) (quotation omitted). As the Supreme Court explained in *Illinois* v. *Gates*:

> The process [of determining probable cause] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same — and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

462 U.S. 213, 231-32 (1983) (quotation omitted). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238; *see also Maryland* v. *Pringle*, 540 U.S. 366, 371 (2003) ("The probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities . . . . We have stated . . . that [t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt.") (internal quotation

marks and citations omitted); *Hill* v. *California*, 401 U.S. 797, 804 (1971) ("[S]ufficient

probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment.").

The information considered by the magistrate judge should take into account the

"totality-of-the-circumstances" and entail an "assessment of probabilities in particular factual

contexts." *Illinois* v. *Gates*, 462 U.S. at 232-33; *accord United States* v. *Martin*, 426 F.3d 68,

75-77 (2d Cir. 2005). Thus, in assessing the information presented in support of the search

warrant, consideration should be given to "the age of [the presented] facts and the nature of the

conduct alleged to have violated the law." *United States* v. *Martino*, 664 F.2d 860, 867 (2d Cir.

1981); *see also United States* v. *Ortiz*, 143 F.3d 728, 732 (2d Cir. 1998).

A magistrate's finding of probable cause should be given "great deference" by reviewing

courts. *See Gates*, 462 U.S. at 236 (citation omitted). A defendant "who argues that a warrant

was issued on less than probable cause faces a heavy burden." *Rivera* v. *United States*, 928 F.2d

592, 602 (2d Cir. 1991). Even the resolution of marginal cases should be determined with regard

to the preference accorded to warrants. *See Jones* v. *United States,* 362 U.S. 257, 270 (1960).

2. Discussion

The warrant affidavits at issue here sufficiently establish probable cause to believe that

evidence of a crime would be found at the Moslemi and Bandrich law firms. The affidavit for

the Moslemi warrant relied upon information provided by three cooperating government

witnesses, two of whom, CW-2 and CW-3, were former employees of Moslemi and one of

whom, CW-1, posed as an applicant seeking asylum. These sources provided information to the

affiant about how the asylum fraud scheme worked – information which was provided to the

reviewing magistrate in paragraph 6 of the Moselmi affidavit – as well as information about the

evidence of the scheme likely to be found at the Moslemi law office.  Specifically, CW-1told the affiant that she had been shown sample persecution stories while at the Moselemi law office.  Moselmi Aff. ¶ 7a.  CW-2 and CW-3 told the affiant that they had written false persecution stories for clients of the Moslemi firm who were seeking asylum, and had used materials at the firm in preparing and saving these stories.  Moselmi Aff. ¶¶ 7b and 7c.  Considering the totality of the circumstances set forth in the Moselmi affidavit, including statements from multiple cooperating witnesses that they had authored false persecution stores for inclusion in asylum applications while working at the Moslemi law firm, Magistrate Judge Netburn appropriately determined that there was a "fair probability" that evidence of criminal activity would be found at the Moslemi law firm.

Feng Ling Liu counters that the information supplied in the Moslemi affidavit is insufficient because there is no basis for assessing the reliability of the information provided by the Government's cooperating witnesses.  *See* Liu Mem. at 3 (citing *United States* v. *Wagner*, 989 F.2d 69, 72 (2d Cir. 1993)).  But *Wagner* itself provides that "[i]nformation may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of providing reliable information."  *Id.* at 72-73.  Here, the affidavit states that CW-1, CW-2 and CW-3 all "provided reliable information in the past regarding immigration fraud."  Moslemi Aff. ¶ 7 nn. 1-3.  Under *Wagner*, the informants' past track record of reliability provides sufficient indicia of the reliability of the information learned from those informants which is set forth in the Moslemi affidavit and it was therefore reasonable for Judge Netburn to accept the underlying reliability of the information provided by the informants.

Liu also objects to the sufficiency of the affidavit because of the possible staleness of the information set forth therein.  Liu Mem. at 3-4.  Specifically, Liu notes that the timing of  CW-2 and CW-3's employment at the Moslemi law firm is not set forth in the affidavit.  While it is generally true that "the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past," it is also true that "[f]acts of past criminal activity that by themselves are too stale can be sufficient if the affidavit also establishes a pattern of continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence." *Wagner*, 989 F.2d at 75.

Here, the affidavit, taken as a whole, establishes such a pattern of continuing criminal activity.  Both CW-2 and CW-3 wrote multiple false persecution stories while employed as paralegals at the Moselmi firm.  Moslemi Aff. ¶ 7b and 7c.  The affidavit describes the scheme orchestrated by employees of the Moslemi law firm as one involving "at least two hundred fraudulent asylum applications on behalf of Chinese aliens" and states the role of the paralegals at the Moslemi law firm was to make up stories of persecution that were then reviewed by the lawyers at the Moslemi firm.  Moslemi Aff. ¶¶ 6a and 6g.  Further, the search warrant affiant, FBI Special Agent Christopher DeGraff stated in the affidavit that based on his training and experience, it was customary for employees of law firms involved in immigration fraud to maintain related documents for years after their creation or receipt.  Moslemi Aff. ¶ 8.  In these circumstances, Judge Netburn could appropriately conclude that the affidavit presented evidence of continuing criminal activity at the Moslemi law firm and established the likelihood that

records relating to the criminal activity would be found at the premises where the law firm

operated. *See United States* v. *Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (rejecting a staleness

challenge to a warrant where 20 months had elapsed between the last known occurrence of the

facts relied on and the issuance of the warrant). In sum, Judge Netburn's issuance of the warrant

for the Moslemi firm was sufficiently supported by probable cause.[2]

The same conclusion arises with respect to the search of the Bandrich law office. The

affidavit supporting issuance of the warrant to search the Bandrich law office sets forth

information obtained from a cooperating witness, CW-1, whose past reliability is attested to in

the affidavit. *See* Bandrich Aff. ¶ 7a n. 1. CW-1 informed the warrant affiant that he visited the

Bandrich law firm while posing as an asylum applicant. Bandrich Aff. ¶ 7a. While at the firm,

CW-1 met with an employee of the firm who used firm equipment to generate a false affidavit

for CW-1. *Id.* That same employee of the firm instructed CW-1 to find someone who could

falsely swear to the affidavit. *Id.* On a different occasion, CW-1 met with Sunny Yang, who is a

named defendant in this case and another paralegal at the Bandrich firm. Bandrich Aff. ¶ 7b.

During CW-1's visit with Yang, Yang provided CW-1 with a persecution story that falsely

claimed that CW-1 had been persecuted in China for his affiliation with Falun Gong. *Id.* While

he was present in the premises where the Bandrich law firm was located, CW-1 was instructed

---

[2] Liu argues that the reviewing magistrate could not rely on the allegations in the sealed
indictment when assessing whether sufficient probable cause existed to support the issuance of
the warrant. Liu Mem. at 4-5. The Court need not reach this issue at this point because
sufficient probable cause for the issuance of the warrant is present on the face of the affidavit.
For the reasons set forth above, paragraph 7 of the affidavit, couple with the description of how
the fraudulent asylum scheme operated which is set forth in paragraph 6 of the affidavit and
which is derived from information provided by the cooperating witnesses cited in paragraph 7 of
the affidavit, as well as the information in paragraphs 8 through 13 of the affidavit, which set
forth information derived from the affiant's training and experience, are more than sufficient to
establish probable cause that evidence of criminal activity was likely to be found at the Moslemi
law firm. Reliance upon the indictment is not necessary to support this conclusion.

by Yang to copy the false story in his own hand.  *Id.*  This information, coupled with the

affidavit's information about how the fraudulent asylum scheme worked,  Bandrich Aff. ¶ 6, and

Agent DeGraff's information from his training and experience about the types of materials

retained by law firms involved in fraudulent asylum schemes, Bandrich Aff. ¶¶ 8-13, was

sufficient to establish a "fair probability" that evidence of criminal activity would be found at the

Bandrich law firm.  As a result, the warrant to search the Bandrich law firm was sufficiently

supported by probable cause.

### B.   The Law Enforcement Officers Conducting The Searches Relied In Good Faith On The Validity Of The Warrants

Even if the Court finds that the warrants were unsupported by probable cause – which,

for the reasons set forth above, the Court should not – the motions to suppress should be denied

because law enforcement relied in good faith on the validity of the warrants.

### 1.   Applicable Law

Under the so-called "good faith" exception, the exclusionary rule and its remedy of

suppression should not apply where evidence is "obtained in objectively reasonable reliance on a

subsequently invalidated search warrant."  *See United States* v. *Leon*, 468 U.S. 897, 922 (1984).

In announcing this principle, the Supreme Court noted that suppression could have no deterrent

effect on law enforcement that acted on the objectively reasonable assumption that their conduct

did not violate the Fourth Amendment.  *Id.* at 918-19.  In analyzing the applicability of the good

faith exception, the pivotal question is "whether a reasonably well trained officer would have

known that the search was illegal despite the magistrate's authorization."  *Id.* at 922 n.23.  If the

reviewing court finds that the officers' reliance on the warrant was objectively reasonable,

suppression is not warranted.  *See, e.g.*, *United States* v. *Singh*, 390 F.3d 168, 183 (2d Cir. 2004).

The good faith exception is inapplicable to situations: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States* v. *Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon*, 468 U.S. at 923); *accord United States* v. *Falso*, 544 F.3d 110, 125 (2d Cir. 2008).   As the Supreme Court has observed, however, "[r]easonable minds frequently may differ on the question whether a particular affidavit established probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *Leon*, 468 U.S. at 914.   "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient."  *Id.* at 921.

     2.   <u>Discussion</u>

Here, although none of the movants address the "good faith exception" in their moving papers, the defendants cannot show why law enforcement's reliance on the warrants in this matter was objectively unreasonable or in bad faith.  Because such a showing cannot be made – and in fact was not even attempted by the movants – the seized evidence from the Moslemi and Bandrich law firms should not be suppressed because the law enforcement officers executing the warrant relied with objective reasonableness, and in good faith, upon the facial validity of these warrants.

At the same time, there are no facts to suggest that Magistrate Judge Netburn was intentionally misled, that she abdicated her role as a judge, or that the affidavits were so deficient

or lacking in probable cause as to make reliance on them unreasonable.  To the contrary, as set forth above, the affidavits clearly set forth that there was probable cause to believe that the law firms whose premises were searched were engaged in asylum fraud.  Under these circumstances, giving Magistrate Judge Netburn the appropriate level of deference, the motion to suppress should be denied based on the good faith exception to the exclusionary rule.  *See United States* v. *Filippi*, 2013 WL 208919, at *5 (S.D.N.Y. Jan. 16, 2013) (Abrams, *J*.).

## C. The Seized Evidence Should Not Be Suppressed On Attorney-Client Privilege Grounds

Bandrich also seeks suppression of the evidence seized from the Bandrich law office on two grounds related to the attorney-client privilege.[3]  First, Bandrich asserts that the evidence should be suppressed because it was reviewed by a law enforcement filter agent, rather than a special master, before being turned over to the prosecution team.  Second, Bandrich asserts that the evidence should be suppressed because the Government has not established that the crime-fraud exception applies to any otherwise privileged materials.

Bandrich's objections to the government's review procedure fail.  Bandrich waived any disagreement as to the Government's proposed review procedure by failing to object in a timely manner.  The Government's proposed review procedure was outlined in the search warrant affidavits, which the Government produced to defense counsel immediately after the first pretrial conference in this matter and before any review pursuant to those procedures had begun.  The Government agreed to immediate production of the warrant affidavits in order to "put counsel in the best position if they take issue with the procedure that's spelled out therein to raise the issues and raise it sooner than later."  Tr. 13.  No defense counsel objected to the proposed review

---

[3] Feng Ling Liu does not seek suppression of the evidence of the fruits of the search of the Moslemi law firm on these grounds.

procedure before the Government began its review.  Now, in hindsight, Bandrich argues that the

Government should have requested that the Magistrate Judge reviewing the warrant applications

designate a special master to conduct the initial review of the seized materials.  Bandrich Mem.

at 7.  After receiving the warrant affidavits, Bandrich could have objected to the Government's

proposed review procedure, before such review had commenced, or requested that this Court

appoint a special master in lieu of the Government's proposed review procedure.  Bandrich never

made any such objection, nor requested that this Court appoint a special master to review the

seized documents.  Bandrich's failure to object in a timely manner constitutes a waiver of any

disagreement with the proposed review procedure.  This is particularly true in light of the fact

that there was nothing improper about the Government's review procedure.  *See S.E.C.* v.

*Rajaratnam*, 622 F.3d 159, 183 n. 24 (2d Cir. 2010) ("This inevitable 'tainting' of the team of

attorneys is the reason that so-called 'ethical walls' are erected to insulate attorneys from

conflicts of interest, immunized testimony, or materials that may have been illegally obtained.")[4].

     Bandrich also seeks suppression of the evidence on the grounds that the Government has

not established that the seized materials fall within the crime-fraud exception to the attorney-

client privilege.  *See* Bandrich Mem. at 4-5.  Bandrich asserts that the Government cannot make

the requisite showing under *United States* v. *Rivera*, 837 F. Supp 565, 569 (S.D.N.Y. 1993) of

"probable cause to believe that in each instance (1) the communications were elicited as part of

---

[4] To be sure, there are District Court decisions holding that the use of so-called "taint teams" or "ethical walls" to review potentially privileged materials are disfavored.  *See, e.g.*, *United States* v. *Stewart*, 2002 WL 1300059, at *6 (S.D.N.Y. Jun. 11, 2002) (collecting cases); *United States* v. *Kaplan*, 2003 WL 22880914, at *12 (S.D.N.Y. Dec. 5, 2003).  However, none of these cases hold that use of a taint team is itself legally improper, or that the use of such a mechanism to review potentially privileged materials necessitates suppression of all fruits of the review.  Indeed, such review procedures are used with some regularity in this district.  *See Kaplan*, 2003 WL 22880914 at *12 n. 12 (listing five criminal cases where "ethical walls" were employed to review potentially privileged materials).

an ongoing scheme to commit a fraud, and (2) the client was aware at the time of the communication that he was participating in a fraud."  Bandrich Mem. at 5.  Bandrich further argues that the affidavit underlying the issuance of the warrant to search the Bandrich law firm does not supply the probable cause need to support invocation of the crime-fraud exception. Probable cause supporting the invocation of the crime-fraud exception need not be limited to factual assertions set forth in the affidavit that supported the search during which the documents subject to the crime-fraud exception were discovered.  Indeed, it would be difficult, if not impossible, to assert in an affidavit the basis for invocation of the crime-fraud exception with respect to a particular document *before* that document has even been discovered.

At this time, although the Government has made available to defense counsel all of the materials seized during the execution of the warrant at the Bandrich law firm, it has identified a narrow universe of approximately 28 pages of documents which it believes are materials discoverable pursuant to Rule 16(a)(1)(E)(ii) of the Federal Rules of Criminal Procedure because the Government intends to use these materials in its case-in-chief at trial.[5]  Certain of these materials, including blank Chinese stationery, do not contain communications that are made for the purpose of obtaining or providing legal advice, and are therefore not covered by the attorney-client privilege.  *See United States* v. *Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).  The other documents identified as Rule 16 materials include a handwritten persecution story with blanks for proper names to be inserted; "study guides" providing advice about how to present Christianity, family planning and Falun Gong persecution claims; tips for asylum interviews; and information provided by clients, including a birth certificate and a description of routes by which

---

[5] These materials are identified with the Bates labels 934.407 through 934.434 and were produced directly to each of the defense counsel in this case.

the individual was smuggled into the United States.  In light of the information provided by CW-1 that he received a false affidavit and a false persecution story from the Bandrich law firm, there is probable cause to believe that handwritten persecution stories or documents containing advice as to how best position various types of persecution claims to the asylum office are done in furtherance of a fraud and with knowledge on the part of the client that he is enmeshed in a fraud.  As a result, these materials are subject to the crime-fraud exception.

Finally, information communicated by clients to the Bandrich law firm in furtherance of their asylum application is also not subject to the attorney-client privilege because of the expectation that such information would be turned over to a third party and thus not kept confidential.  *Rivera*, 837 F. Supp. at 569.  The birth certificate and smuggling route documents are therefore not covered by the attorney-client privilege.  In sum, none of the materials seized from the Bandrich law firm which the Government has asserted will be used in its case-in-chief at trial are covered by the attorney-client privilege and suppression of these materials is not required.  To the extent that the Government determines that there are other documents within the universe of materials seized from the Bandrich law firm that it intends to use at trial, it will identify any such additional materials to the defendants sufficiently in advance of trial so that they can be the subject of *in limine* motion practice.

## II.     THE COURT SHOULD DENY DEFENDANTS' REQUESTS FOR A BILL OF PARTICULARS

Defendant Feng Ling Liu seeks a bill of particulars identifying the names of the asylum applicants for whom she and others helped make up stories of persecution in aid of their asylum applications.  Liu Mem. at 6-7.  Defendant Shuran Liu joins in Fing Ling Liu's motion.  Defendant Yuchang Miao, a/k/a "David", seeks a bill of particulars identifying which asylum

applicants he personally interviewed and what overt acts he committed in furtherance of the conspiracy. Miao Mem. at 1. Both defendants' requests should be denied as the Government has provided more than enough information needed for them to prepare a defense. Moreover, as a matter of law, the defendants are not permitted to compel the disclosure of the information they seek through a bill of particulars.

### A.      Applicable Law

It is well established that the proper scope and function of a bill of particulars is to provide sufficient information about the nature of the charge to enable a defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense. Fed R. Crim. P. 7(f); *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1990). "A bill of particulars should be required only where the charges of the Indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States* v. *Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (internal quotation marks and citation omitted); *Torres*, 901 F.2d at 234. If the information the defendant seeks "is provided in the indictment or in some acceptable alternative form," such as discovery, no bill of particulars is required. *United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *United States* v. *Morales*, 280 F. Supp. 2d 262, 274 (S.D.N.Y. 2003).

Defendants cannot use a bill of particulars as a general investigative tool, *United States* v. *Salazar*, 485 F.2d 1272, 1277-78 (2d Cir. 1973), or as a device to compel disclosure of the Government's evidence prior to trial, *see United States* v. *Gottleib*, 493 F.2d 987, 994 (2d Cir. 1974). "The Government is not required to disclose the manner in which it will attempt to prove charges, nor the means by which the crimes charged were committed, [therefore] 'the

16

Government is not required to give information that would, in effect, give the defendant a preview of the Government's case before trial.'" *United States* v. *Triana-Mateus*, 98 Cr. 958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (quoting *United States* v. *Conley*, 00 Cr. 0816 (DAB), 2002 WL 252766, at *4 (S.D.N.Y. Feb. 21, 2002)); see *United States* v. *Cephas*, 937 F.2d 816, 823 (2d Cir. 1991); *Torres*, 901 F.2d at 233-34 (demands under request for bill of particulars for "whens" and "wheres" and "by whoms" within charged conspiracy are improper attempts at general pretrial discovery); *United States* v. *Muyet*, 945 F.Supp. 586, 598-99 (S.D.N.Y. 1996) ("[I]t is improper to use a bill of particulars to compel the Government to disclose the manner in which it will prove the charges or preview its evidence or legal theory." (quotation marks and citations omitted)). The ultimate test is whether the information sought through a bill of particulars is necessary, not whether it is helpful. *United States* v. *Tripe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001).

In the context of conspiracy allegations in particular, "demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are <u>routinely denied</u>." *Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (emphasis added) (collecting cases); *see, e.g., Torres*, 901 F.2d at 233-34; *United States* v. *Remire*, 400 F. Supp. 2d 627, 633 (S.D.N.Y. 2005); *United States* v. *Love*, 859 F. Supp. 725, 738 (S.D.N.Y. 1994). As Judge Sand held in *United States* v. *Booth*, 1999 WL 1192317 (S.D.N.Y. Dec. 14, 1999):

> As a general rule, the defendant does not "need" detailed evidence about the conspiracy in order to prepare for trial properly. It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts . . . Details as to how the conspiracy was formed, or when each participant entered it, need not be revealed before trial.

17

*Booth*, 1999 WL 1192317, at *9 (quotations omitted).

    **B.**    **Discussion**

    Here, a bill of particulars is not necessary because the Indictment and the discovery provided in this case more than adequately inform the defendants of the charges against them. The Indictment, which is a fourteen page "speaking" Indictment, sets forth sufficiently detailed allegations to advise the defendants of the nature of the charges, including a narrative description of the fraud, the relevant time period, the identities of the participants in the fraud, a description of the role each participant played in the fraud, and specific overt acts taken in furtherance of the fraud by each defendant. Even more detail regarding the Government's allegations has been provided in discovery. The Government has provided each defendant with the fraudulent asylum applications the Government alleges were prepared in the conspiracy charged in the Indictment. Most, if not all, of the applications contain biographical information relating to the applicant, including the applicant's name, date of birth and home address, as well as the applicant's personal statement setting forth the basis of the applicant's claim to asylum.[6] The Government has also provided each defendant with compact discs containing recorded conversations the Government believes are evidence of the defendant's participation in the fraud. To aid defense counsel in reviewing those discs, the Government created and produced a summary chart numbering each compact disc recording, listing the date each recording was made, and identifying to which particular defendant that recording relates. In addition, evidence relating to

---

[6] The Government produced the asylum applications in the form it received them from the New York Asylum Office. The Government does not expect that it will attempt to prove the charged conspiracy at trial through an assessment of the fraudulent nature of the applications prepared by the charged defendants on an application by application basis. Rather, the Government will present evidence that the charged defedants agreed to commit asylum fraud by falsifying asylum applications, including at least some of those asylum applications produced during discovery.

the fraud that was found pursuant to the search warrants for the Moselimi law firm and the

Bandrich law firm, has been identified and made available in discovery.  Accordingly, the

defendants have been given more than enough information needed to prepare a defense and there

is no possibility for unfair surprise at trial.

       Feng Ling Liu's request for a bill of particulars is not proper as it is clearly an attempt to

compel a preview, four months in advance, of the Government's case at trial.  Although styled as

a request for a bill of particulars, Liu's motion is really a request for the Government's witness

list.  As mentioned above, the Government has provided each defendant with the fraudulent

asylum applications related to the conspiracy charged in the Indictment, so Liu already has the

names of the applicants for whom she and others helped fabricate stories of persecution.  What

Liu really wants is for the Government to identify which of those applicants will be the focus of

the trial.  As Liu states in her motion, "[l]ocating and interviewing all of [the applicants] would

be an impossible task for any defense investigator . . . . but a list of 50 would allow defense

counsel to do our work."  Liu Mem. at 7-8.  Courts in this district have routinely denied attempts

by defendants to compel the disclosure of Government witnesses through a motion for a bill of

particulars. *See United States* v. *Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994) (finding that a

bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be

offered by the Government at trial or as a general investigative tool for the defense."); *United

States* v. *Gotti*, 2004 WL 32858, *9 (S.D.N.Y. 2004) (denying defendant's request that the

names of witnesses be provided in a bill of particulars because "[m]oving Defendants are not

entitled, at this time, to the names of co-conspirators, witnesses, and victims"); *United States* v.

*Viertel*, 2002 WL 1560805, *12 (S.D.N.Y. 2002) ("To the extent that [defendant's] request for

identities of unnamed co-conspirators is really a request for a list of the witnesses that the government intends to call at trial, the defendant is not entitled to such a list because he has not made the necessary specific showing of need.")  Accordingly, Liu's request should be denied.

Yuchang Miao's request for a bill of particulars is also an improper attempt to compel the Government to disclose the manner in which it will prove its charges at trial.  Miao seeks "a bill of particulars identifying which clients he interviewed and what overt acts he committed in furtherance of the conspiracy."  Miao Mem. at 1.  Miao's attempt to learn "which clients he interviewed" is an attempt to learn which witnesses the Government intends to call at trial against him.  As mentioned above, the Government has provided every defendant with the fraudulent asylum applications that are related to the conspiracy charged in the Indictment.  To request the Government to identify which of the applicants related to those applications had direct dealings with Miao is to ask the Government which witnesses will testify against Miao at trial.  For the reasons stated above, such a request is an improper use of a motion for a bill of particulars and should therefore be denied.

Miao's request that the Government be compelled to identify what overt acts Miao has committed in furtherance of the conspiracy is also impermissible.  As an initial matter, contrary to what Miao's request suggests, the Government has identified an overt act committed by Miao in the Indictment.  The Indictment states that "[i]n or about 2010, YUCHANG MIAO, a/k/a 'David,' the defendant, advised clients of the law firm Moslemi and Associates to make up stories of persecution in aid of their asylum applications."  Indictment at 12.  Nevertheless, courts in this district have made it clear that a motion for a bill of particulars cannot be used to compel the Government to reveal the means by which a defendant performed acts in furtherance

of a conspiracy. *See United States* v. *Clarke,* 2006 WL 3615111, * 8 (S.D.N.Y. 2006) ("It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts."); *United States* v. *Meregildo et al.*, 2012 WL 4378047, * 7 (S.D.N.Y. 2012) ("The necessity of a bill of particulars depends on the nature of the charged crime.  When charging conspiracy, the Government is not required to set out precisely each and every act committed by the conspirators in furtherance of the conspiracy."); *United States* v. *Abakporo*, 2013 UL 1790685, *7 (S.D.N.Y. 2013) (denying defendant's request for a bill of particulars seeking "evidentiary information concerning overt acts" as "the level of detail requested by [the defendant] with regard to particular overt acts is simply not required".); *United States* v. *DeFabritus*, 605 F. Supp. 1538, 1548 (S.D.N.Y. 1985) (denying defendant's request for a bill of particulars listing "all overt acts not listed in the indictment" because "[a] defendant does not ordinarily 'need' detailed evidence of the conspiracy to prepare for trial".)  As such, Miao's request should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny defendants' motions to suppress the fruits seized pursuant to the search warrants for the Moslemi and Bandrich law firms. Additionally, the Court should deny the defendants' motion for a bill of particulars.

Respectfully submitted,
PREET BHARARA
United States Attorney
Southern District of New York

By:    /s/ Brian R. Blais
        Brian R. Blais

Dated: New York, New York      Robert L. Boone
       August 30, 2013         Assistant United States Attorneys

22