USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/7/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA,

-v-

FENG LING LIU,
VANESSA BANDRICH,
FENG LI,
SHURAN LIU, a/k/a "Harry,"
YUCHANG MIAO, a/k/a/ "David,"
SUNNY YANG, a/k/a/ "Ms. Yang,"
WEN TING ZHENG,
GUO QIN MIAO, a/k/a/ "Lillian," and
KEVIN LNU,

                              Defendants.

-----------------------------------------------------------X

No. 12 Cr. 934 (RA)

MEMORANDUM
OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Defendant Vanessa Bandrich moves to sever her trial from that of her codefendants, claiming that a joint trial would expose the jury (1) to evidence otherwise inadmissible against her, causing spillover prejudice, and (2) to the antagonistic defenses of her codefendants. For the reasons that follow, the Court denies the motion.

## BACKGROUND

The background of this prosecution, including a summary of the indictment, can be found in this Court's opinion addressing Defendants' motions to suppress and for a bill of particulars. See United States v. Feng Ling Liu, No. 12 Cr. 934 (RA), 2014 WL 101672, at *1-2 (S.D.N.Y. Jan. 10, 2014).

## DISCUSSION

Federal Rule of Criminal Procedure 8(b) provides that an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "[A] non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed. R. Crim. P. 8(b)." United States v. Nerlinger, 862 F.2d 967, 973 (2d Cir. 1988). Here, Bandrich was properly charged in the same indictment as her codefendants with a sole, non-frivolous count of conspiracy to commit immigration fraud.

"There is a preference in the federal system for joint trials of defendants who are indicted together" because joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" Zafiro v. United States, 506 U.S. 534, 537 (1993) (quoting Richardson v. Marsh, 481 U.S. 200, 210 (1987)). "Joint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy, as is the case here." United States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003). Thus, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. "The decision to grant or deny severance is 'committed to the sound discretion of the trial judge.'" Spinelli, 352 F.3d at 54 (quoting United States v. Blount, 291 F.3d 201, 209 (2d Cir. 2002)).

Bandrich advances two arguments in favor of severance, both of which lack merit. First, she claims that a joint trial will result in "spillover prejudice" because most of the Government's evidence will be directed at Defendant Feng Ling Liu and her "family members." (Maher Decl.

2

¶¶ 8-9.) "'Prejudice' occurs in joint trials when proof inadmissible against a defendant becomes a part of h[er] trial solely due to the presence of co-defendants as to whom its admission is proper." United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998). "A defendant's claim that [s]he [will be] prejudiced by the admission of evidence at a joint conspiracy trial is [therefore] insupportable when the evidence would [be] admissible against h[er] in a separate trial alone as a member of the conspiracy." Id.

Here, the Government has represented that all the evidence at trial will be admissible against Bandrich and that the Government's proof against her "would remain virtually identical even if she proceeded to trial alone." (Gov. Opp'n 8.) The Court agrees, as evidence of Bandrich's codefendants' activities in this case would generally be admissible at a separate trial of Bandrich because "it [i]s relevant to proving the nature and scope of the conspiracy." Spinelli, 352 F.3d at 56; see also Salameh, 152 F.3d at 116. "[A]ll evidence concerning acts committed by [Bandrich's] co-defendants in furtherance of the conspiracy is relevant to a jury's determination as to whether a conspiracy existed and, therefore, relevant to the ultimate finding of [her] guilt or innocence on the conspiracy charge." United States v. Vasquez, S1 No. 92 Cr. 101 (RPP), 1992 WL 249891, at *2 (S.D.N.Y. Sept. 24, 1992); see also United States v. Trippe, 171 F. Supp. 2d 230, 239 (S.D.N.Y. 2001) ("[G]enerally, in conspiracy cases, the Government is entitled to present the entire range of evidence against each defendant.").

In any event, "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." Spinelli, 352 F.3d at 56 (quoting United States v. Carson, 702 F.2d 351, 367 (2d Cir. 1983)). Should evidence inadmissible against Bandrich be introduced at trial, the Court will be sure to instruct the jury "to assess the evidence

against each defendant separately from the proof against the other defendants." United States v. Villegas, 899 F.2d 1324, 1347 (2d Cir. 1990).

Bandrich amplifies her "spillover prejudice" argument with the claim that "the government will offer a significantly smaller quantum of proof" against her than against her codefendants. (Maher Decl. ¶ 8.) This speculation—which the Government disputes—is belied by the indictment's description of Bandrich's illegal conduct. (Indictment ¶¶ 22-24, 31(b), (f), (h).)[1] In any event, "[d]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." Spinelli, 352 F.3d at 55 (quoting Carson, 702 F.2d at 366-67). "Even 'joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible.'" Id. (quoting United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993)). The Court is confident that instructing the jury "to consider the defendants individually" will mitigate any prejudice to Bandrich attributable to the allegedly disproportionate amount of evidence against her alleged coconspirators. Id.

Bandrich also cites United States v. Casamento, 887 F.2d 1141, 1151-52 (2d Cir. 1989) for the proposition that spillover prejudice "will be exacerbated by the unwieldy number of defendants at trial and potential length of trial." (Maher Decl. ¶ 9.) In Casamento, the Second Circuit instructed district courts to require the prosecution to justify any joint trial "where the judge determines that the time for presentation of the prosecution's case will exceed four months," especially where there will be "more than ten defendants." 887 F.2d at 1152. The

---

[1] Unlike the movant in United States v. Gilbert, a case upon which Bandrich relies, Bandrich has not "made a sufficient showing of disproportionate involvement in the overall scheme to raise a substantial risk that [s]he would be prejudiced by the gradually accumulating effect of evidence of [her alleged coconspirators'] wrongdoing." 504 F. Supp. 565, 571 (S.D.N.Y. 1980).

Court was nevertheless satisfied that the seventeen-month trial with which it was confronted, which joined twenty-one defendants, had "fully respected the rights of the defendants." Id. Here, the joint trial of at most five defendants is expected to last no more than one month. Under these circumstances, the Court cannot conclude that the trial will be of sufficient length or complexity to confuse the jury.[2]

The second contention Bandrich advances in support of severance is that she and her codefendants "will have mutually antagonistic defenses." (Maher Decl. ¶ 10.) Specifically, Bandrich claims that she "will argue that any fraud committed at Bandrich and Associates was committed by and under the direction of members of the Liu-Miao family, as well as other co-defendants," while her codefendants "likely will argue that Ms. Bandrich was responsible for any fraud committed at Bandrich and Associates." (Id. ¶ 12.) The argument fails for a number of reasons.

---

[2] Bandrich cites only a handful of Second Circuit cases in which the spillover prejudice was deemed unacceptable, and all are distinguishable. In United States v. Branker, "[t]he eight defendants who were tried were named in eighty substantive counts charging violation of six criminal statutes," coconspirator testimony was admitted to support a conspiracy count that was dismissed at the close of the Government's case, and the defendants entitled to severance were "charged in only a few of the many counts" and "involved in only a small proportion of the evidence." 395 F.2d 881, 887-88 (2d Cir. 1968). In United States v. Kelly, the evidence against the codefendants was overwhelming, the defendant entitled to severance was in court "for three months or more before his name was even mentioned," and the defendant's "illness and inability to be present caused several adjournments that were most unwelcome to the jurors" and caused them to suspect malingering. 349 F.2d 720, 759 (2d Cir. 1965). Finally, the Second Circuit in United States v. Figueroa found that two defendants were unacceptably prejudiced by the introduction of their codefendant's prior criminal acts in part because that evidence should not have been admitted against the codefendent either. 618 F.2d 934, 946-47 (2d Cir. 1980). None of these cases governs the motion before this Court.

5

First, Bandrich's "bald conjecture is unsupported by specifics concerning defense theories that [her] co-defendants might plausibly advance and is [therefore] insufficient to show that joinder will deny [her] 'a fair trial.'" United States v. Cournoyer, No. 12 Cr. 65, 2012 WL 6539659, at *5 (E.D.N.Y. Dec. 14, 2012) (quoting United States v. Chang An-Lo, 851 F.2d 547, 556 (2d Cir. 1988)); see also United States v. Forde, 699 F. Supp. 2d 637, 645 (S.D.N.Y. 2010).

Indeed, the Government disputes Bandrich's contention that her codefendants are likely to claim that she was solely responsible for any fraud committed at her firm in light of the fact that "so many of the meetings with fraudulent asylum applicants (including many captured on [electronic recordings]) took place in Mandarin—a language [that] Bandrich does not speak" but that all of her codefendants do speak. (Gov. Opp'n 9.) The Court agrees that the codefendants are therefore more likely to claim that they were unaware of or did not participate in any fraud—defenses that are not irreconcilable with similar assertions from Bandrich. See United States v. Yousef, 327 F.3d 56, 151 (2d Cir. 2003) ("Defenses are mutually antagonistic when accepting one defense requires that 'the jury must of necessity convict a second defendant.'"). Bandrich did not reply to the Government's argument, and she has made no further attempt to provide support for her supposition that her codefendants will assert antagonistic defenses. Her showing is therefore insufficient to warrant severance at this juncture.

In any event, "[m]utually antagonistic defenses are not prejudicial per se." Salameh, 152 F.3d at 116 (quoting Zafiro, 506 U.S. at 538). As the Supreme Court held in Zafiro, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." 506 U.S. at 538-39. In Zafiro, two defendants who had dropped a large box filled with cocaine each claimed ignorance of its contents and asserted that it belonged to the other defendant. Id. at 535-36. The two residents of

the apartment to which these defendants fled similarly each claimed that the drugs found in that apartment belonged to the other resident. Id. at 536. The Supreme Court nevertheless found that severance was not required, particularly in light of the district court's limiting instructions. See id. at 540-41. Severance is likewise unnecessary here. Should Bandrich and her co-defendants ultimately assert mutually antagonistic defenses, they may request similar limiting instructions to "cure any risk of prejudice." Id. at 539; see also Yousef, 327 F.3d at 151-52.

It is well settled that "a defendant cannot avoid the risks of a joint trial simply because [s]he might have a better chance of acquittal in a separate trial." United States v. Figueroa, 618 F.2d 934, 944 (2d Cir. 1980). As Bandrich has failed to show that a joint trial would "compromise a specific trial right" or "prevent the jury from making a reliable judgment about guilt or innocence," Zafiro, 506 U.S. at 539, her motion to sever is denied.

SO ORDERED.

Dated:     March 7, 2014
           New York, New York

                                                    _____
                                                    Ronnie Abrams
                                                    United States District Judge