

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*United States Courthouse*
*1 St. Andrews Plaza*
*New York, New York 10006*

July 24, 2014

**BY EMAIL AND ECF**

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10006

        Re:    **United States v. Quo Qin Miao**,
                  12 Cr. 934 (RA)

Dear Judge Abrams:

      The Government respectfully submits this supplemental letter in connection with the sentencing of defendant Quo Qin Miao, a/k/a "Lillian," which is scheduled for August 1, 2014 at 5:30 p.m. and in brief response to the defendant's sentencing submission dated July 18, 2014. More specifically, the Government wishes to address the defendant's argument that the defendant "certainly cannot be liable for events occurring prior to her employment at the law firm," and suggesting that the defendant is not responsible for all of the fraudulent applications filed by the law firms because some of the false applications fell outside of the "jointly undertaken criminal activity." Def. Ltr. at 9-10.

      As a preliminary matter, the law is clear that the defendant certainly can be held accountable for events that transpired prior to her entry into the conspiracy. As the Second Circuit has explained, "[t]he rule is clear that one who joins an existing conspiracy takes it as it is, and is therefore held accountable for the prior conduct of co-conspirators." *United States* v. *Sansone*, 231 F.2d 887, 893 (2d Cir. 1956); *United States* v. *Torres*, 503 F.2d 1120, 1124 n.2 (2d Cir. 1974) (same); *see also United States* v. *Barber*, 132 F. App'x 891, 894 (2d Cir. 2005) (summary order) ("We have assumed that, in some instances, a defendant may be responsible for activity that occurred among co-conspirators prior to the defendant's joining the conspiracy."); *United States* v. *Miranda-Ortiz*, 926 F.2d 172, 178 (2d Cir. 1991) ("The late-entering coconspirator should be sentenced on the basis of the full quantity of narcotics distributed by other members of the conspiracy only if, when he joined the conspiracy, he could reasonably foresee the distributions of future amounts, or knew or reasonably should have known what the past quantities were."). Accordingly, the defendant can be held accountable for the number of false asylum applications filed prior to her joining the conspiracy.

      It is clear, in any event, that the defendant should be held accountable for more than 100 fraudulent applications, even if the applications filed prior to her joining the firm are not

Hon. Ronnie Abrams
July 24, 2014
Page **2** of **2**

included in the calculation. The defendant admits that she joined the conspiracy in mid-2010. Def. Ltr. at 9. According to records maintained by United States Citizenship and Immigration Services, between mid-2010 and December 2012 (when the defendants were arrested), the Moslemi law firm alone filed more than 450 asylum applications.[1] Even if the defendant were held responsible solely for this subset of fraudulent applications – a benefit to which she is not entitled – it is clear that she is liable for more than 100 fraudulent asylum applications.

It is also clear that all of the fraudulent applications (filed both prior to and after the defendant's entrance into the conspiracy) were part of the jointly undertaken criminal activity. The defendant's suggestion that she may have merely known of some of the fraudulent applications, without having jointly undertaken that criminal activity is preposterous. Among the defendant's roles in this offense was to greet new and existing clients as they entered the firm. As is clear from some of the recordings referenced in the Government's June 24 letter and admitted as evidence at trial, the defendant interacted with numerous law firm clients each day, and would have interacted with hundreds of clients over the course of her long employment at the firm. The defendant's interactions consisted of asking intake questions directed to ascertaining the applicant's eligibility to participate in the fraud, suggesting the basis for claims of false asylum, coaching clients in their false stories, and discussing the procurement of false documents. The defendant likely interacted with virtually all of the firms' clients over the course of her tenure at the firm. It is clear that the defendant undertook the full criminal activity of the firm. There is simply no basis to find, as the defendant urges, that she undertook only some unspecified subset of the fraudulent activities.

Accordingly, the Government respectfully submits that the Court should hold the defendant accountable for more than 100 fraudulent applications and should impose a sentence within the Sentencing Guidelines range of 27 to 33 months', as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____/s/_____
Rebecca Mermelstein
Robert Boone
Patrick Egan
Assistant United States Attorneys
Southern District of New York
(212) 637-2360/2208/2345

cc: Donald Duboulay, Esq.

---

[1] This number does not include asylum applications filed by the Bandrich law firm during this time period.