E88zxias                    Sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK

2   ------------------------------x

3   UNITED STATES OF AMERICA,              New York, N.Y.

4               v.                         12 CR 934 (RA)

5   SHU FENG XIA,

6                  Defendant.

7   ------------------------------x

8
                                          August 8, 2014
9                                         11:00 a.m.

10
    Before:
11
                        HON. RONNIE ABRAMS,
12
                                          District Judge
13

14                          APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    BY:  REBECCA MERMELSTEIN
17       Assistant United States Attorney

18  JOSHUA DRATEL
         Attorney for Defendant
19
    Also Present:  Victor Chang, Mandarin Interpreter
20

21

22

23

24

25

E88zxias                         Sentence

1                THE DEPUTY CLERK:  All rise.

2                (Case called)

3                MS. MERMELSTEIN:  Good morning, your Honor, Rebecca

4       Mermelstein for the government.  With me is intern in our

5       office, Alexander Beer.

6                THE COURT:  Good morning.

7                MR. DRATEL:  Good morning, your Honor, Josh Dratel for

8       Mr. Xia, who is seated next to me.

9                THE COURT:  Good morning, Mr. Dratel, and good morning

10      to you, Mr. Xia.

11               This matter is on for sentencing in United States

12      versus Shu Feng Xia.

13               In connection with today's proceeding I have reviewed

14      the revised presentence investigation report dated July 29th,

15      2014, including the recommendation and addendum, the

16      defendant's sentencing memorandum dated July 25th, 2014, which

17      includes letters from the defendant and his wife, daughters and

18      other family members, as well as his employer, and a letter

19      from the government dated August 3rd, 2014.

20               I also have the Government's June 27th and August 7th

21      letters regarding forfeiture.

22               Have the parties received each of these submissions

23      and have they been filed with the Clerk of Court?

24               MS. MERMELSTEIN:  Yes, your Honor.

25               MR. DRATEL:  Yes, your Honor.

                                                                    3

E88zxias                         Sentence

1            THE COURT:  Thank you.

2            And is there anything else, is there anything that I'm

3    missing?

4            MS. MERMELSTEIN:  Not from the government.

5            MR. DRATEL:  No, your Honor.

6            THE COURT:  Mr. Dratel, have you read the presentence

7    report and discussed it with your client?

8            MR. DRATEL:  Yes, I have, your Honor.

9            THE COURT:  And has it been translated for him.

10           MR. DRATEL:  Yes, it has.

11           THE COURT:  Mr. Xia, have you read the presentence

12   report -- just actually hold on a second, please.  I'm sorry,

13   you know what, I should swear in the interpreter, so I'd like

14   to do that now.

15           (Interpreter sworn)

16           THE COURT:  Thank you.

17           So, Mr. Xia, have you read the presentence report and

18   has it been translated for you?

19           THE DEFENDANT:  Yes.

20           THE COURT:  And have you had enough time and

21   opportunity to discuss it with your attorney?

22           THE DEFENDANT:  Yes, I had it.

23           THE COURT:  Okay.

24           Mr. Dratel, I understand you have a few objections to

25   the report, so why you don't we go through them.  You can sit

E88zxias                        Sentence

 1    down, Mr. Xia.

 2              So first I understand that you object to paragraph two

 3    which delineates the time period of the conspiracy as alleged

 4    in the indictment.  In your view, does this inaccurately

 5    summarize the allegations in the indictment?

 6              MR. DRATEL:  No.  That's more of an objection just in

 7    terms of not taking -- not portraying, misleading portrayal of

 8    Mr. Xia's length of participation, but in a sense of just

 9    describing the indictment, it's accurate.

10              THE COURT:  I think that's all it does.

11              MR. DRATEL:  Yes.

12              THE COURT:  The section is entitled "charges and

13    convictions."  If there was a different place where you wanted

14    me to add in the dates of his employment, I would consider

15    doing that, although I know there is a separate dispute about

16    that.  But I'm going to keep this as is, so I'm going to

17    overrule that objection.

18              Second, and I think this goes to where he worked and

19    when.  You object to the characterization in page 53.

20              MR. DRATEL:  Paragraph 53.

21              THE COURT:  Paragraph 53 -- I'm sorry, paragraph 53;

22    that Mr. Xia worked both at the Moslemi and the Bandrich firms,

23    claiming that he only worked at the Bandrich firm.  I'll hear

24    the government.  I'll say I'm inclined to agree with you about

25    this, as well Victor You testified that Mr. Xia was trained as

1    a coach in the Moslemi firm.  I don't think it's clear anywhere

2    from the record that he actually worked as a coach or worked in

3    any other capacity at the Bandrich firm.  I looked at the

4    transcript pages, in particular at 606 and 607 and 717.

5              But, Mr. Mermelstein, if you want to speak to this

6    issue, I'm happy to do that.

7              MS. MERMELSTEIN:  Your Honor, the Government's not

8    contending that he sort of worked there on a daily basis at any

9    particular time.  I think that in being trained there, there is

10   an implication that he met with clients there.  But I think

11   it's also significant that when he was arrested on the day that

12   the arrest were executed in this case more broadly, he was

13   arrested at the Feng Ling Lui Moslemi law firm, not at the

14   Bandrich law firm, so.

15             THE COURT:  Well, he has family members there.  He

16   clearly was connected to it.  I think the question is did he

17   work there.  And I'm happy to tweak the language to ensure its

18   accuracy.  So, for example, we could say he was trained as a

19   paralegal at the Feng Ling Liu Moslemi law firm, and

20   subsequently worked at the Bandrich firm.

21             MS. MERMELSTEIN:  That's fine.

22             THE COURT:  Mr. Dratel, is that acceptable?

23             MR. DRATEL:  Sure.

24             THE COURT:  So I'm just looking at the transcript to

25   see how I --I'm going to say, subsequently worked in that

capacity.  Because there is a reference to a paralegal at the

Bandrich law firm.  Okay, so that's number two.

          And then you object to the nine level enhancement.

          MR. DRATEL:  Yes.

          THE COURT:  Because the offense, as calculated in the

presence report, holds him responsible for 100 or more

fraudulent documents.

          How many documents do you think he should be held

responsible for?  I mean, as you know, there are three

categories here.  There is nine level enhancement for 100 or

more, six level enhancment for 25 to 99 and three level for six

to 24.

          MR. DRATEL:  Three levels, your Honor.  Probably

somewhere between one and two dozen.

          THE COURT:  He worked at the law firm -- I think it's

undisputed that he worked from July 2011 to 2012.

          I'm happy to hear you.  I obviously read your letter,

but if there is anything else you would like to say on this

point, I'm happy to hear you out.

          MR. DRATEL:  Just that the burden's on the government.

They don't have evidence of a number that would put it in

there, other than this just omnibus blanket accountability for

the entire firm, which the Second Circuit law clearly doesn't

permit.  It has to be some specific connection to Mr. Xia.  He

only handled a limited number of clients.  That would

1    correspond to the three point enhancement.  And so that's -- I

2    mean, that's what we're bound by, in the sense that there is no

3    evidence otherwise.

4            And the inferential -- the leaps of inference that the

5    Government wants to the Court to make, such that he had a

6    pamphlet on his desk somehow means that he used it all the time

7    and somehow that expands the number just doesn't make any

8    sense.  He could used it once and used the pamphlet.  It

9    doesn't mean anything it's on his desk.  I have things on my

10   desk that I consult once a year so, you know.

11           THE COURT:  There was a lot of evidence at trial that

12   this was a fraud mill.

13           MR. DRATEL:  But there was no evidence as to what his

14   that, what his volume was -- Victor -- and, you know, I wasn't

15   there.  I didn't get a chance to cross-examine.  I don't really

16   feel bound by, even by the very very small snippet of testimony

17   that concerns Mr. Xia, which is very little.  And I didn't get

18   a chance to cross-examine Mr. You about the nature of his

19   recollection.  But even still he didn't put him in that

20   position, just to say someone's a paralegal, someone's

21   involved.  They don't have a roster of people whose

22   applications were processed or coached by Mr. Xia.  That's what

23   they need.  So I can't prove a negative.  They have to prove,

24   according to the Second Circuit cases, Walker, they have to

25   prove it and it's just, it can't flow in the air as some sort

E88zxias                      Sentence

1    of mass accountability.  That's just not the way cases work

2    according to the case law.  So in that context, I don't know

3    what I can prove, other than to put the government to its proof

4    in that regard.

5            THE COURT:  All right, Mr. Mermelstein.

6            MS. MERMELSTEIN:  Thank you, your Honor.  I think

7    we've laid out our point in our letter.  But succinctly I just

8    don't see how this is a close call.  No one is trying to hold

9    him accountable for the 2,000 applications involved in the

10   conspiracy.  We're talking about the nearly 300 applications

11   filed by the Bandrich law firm during the specific time that he

12   worked there.  There was trial testimony that I think

13   circumstantially certainly established that the defendant was

14   the only coach working at the law firm, and that as a matter of

15   the business practices of the firm all clients of the firm

16   would have met with the coach during the process of their

17   pending asylum application.

18           THE COURT:  What about Rachel Yang and Harry Liu?

19           MS. MERMELSTEIN:  I think that they had different

20   roles in the firm.  This defendant was not a story writer.

21   This defendant did not craft the stories that were then going

22   to be submitted to the law firm.  That was a job that was

23   really done by Rachel Yang in connection with Harry Liu.  Harry

24   Liu served as the office manager.  He had a supervisory role

25   over the entire office.  He met with people to ascertain if

9

1   they were going to sort of fit -- their stories could be fit

2   into the fraud.

3            But I think that, you know, at sentencing your Honor

4   is entitled to rely on every kind of evidence, including

5   circumstantial evidence.  And here where there is evidence that

6   the defendant would have met with, essentially, all of the law

7   firms applicants, and the government has established how many

8   applications were filed during the timeframe that the defendant

9   worked there, and it's not like the number is 100 and so if

10  there are just a couple that he didn't meet with on his own

11  it's three times as many as the cut off would be.  And so I

12  don't see there can be any kind of argument that the government

13  hasn't shown that it's at least 100.

14           The idea that 18 months of working there in which his

15  essential sole job was to prep people for these asylum

16  interviews, he would have met --

17           THE COURT:  Where in the trial transcript does it say

18  it was his sole job, and that he was the only coach who did

19  this?  I mean, it's true there's not a lot of testimony about

20  him in the trial transcript.  We went through it.

21           MS. MERMELSTEIN:  I think that there is nowhere in the

22  trial testimony that says that was his sole job.  Of course the

23  trial, because it wasn't about this defendant, there is

24  testimony that could have been offered that wasn't because it

25  wasn't relevant.

1          THE COURT:  Understandably.

2          So I'm speaking now just from the trial testimony, but

3      also from sort of knowledge about the facts of the case,

4      generally.

5          Based on the Government's evidence, the witnesses who

6      the asylum applicants went into the law firm, the cooperating

7      witnesses who talked about what was going on at the law firm,

8      it is the Government's understanding that this defendant did

9      not do anything but coach; that he didn't write stories.  His

10     name has not been found on any of the paperwork that we would

11     have expected it to be found on if he was doing, for example,

12     story writing.  So I think that there is a fair inference that

13     was his only role.  Of course if he had other roles, then he

14     was meeting with other clients in other capacities.

15         The idea that in 18 months he met only with a dozen

16     clients just doesn't make any sense.  And so I think given the

17     proof about the number of applications, the way that the fraud

18     generally worked, who worked in that law firm, and the

19     defendant's role, I think it's a very fair inference that he

20     was involved in more than 100 applications.

21         THE COURT:  Okay thank you.

22         MR. DRATEL:  Your Honor, it's not a Res ipsa loquitur

23     theory of liability.  I don't think the government can proceed

24     that way, whereas somehow there is a some default position that

25     unless you prove no, yes is the answer.  They have to prove yes

1   and they just haven't, and that's their burden.  They can't

2   just go on this notion that it couldn't have happened another

3   way or somehow it had to happen this way because of series of

4   inferences that aren't necessarily factual, but merely

5   hypothetical.  You would think there would be proof if they

6   have so much -- there would be proof.  There is no proof.

7           THE COURT:  All right.

8           In my view I don't have enough evidence before me to

9   impose the nine level enhancement at this time, but I do think

10  that evidence warrants a six level enhancement.  And I should

11  say that if the government wants a Fatico hearing on this, I'm

12  happy to give you the opportunity to have one.  But based on

13  the record before me I'm assuming you don't want that.  So

14  speak up if you do.

15          It's undisputed that Mr. Xia worked at the Bandrich

16  firm from July 2011 to December 2012, one and a half years.

17          Mr. Xia argues that he only began paralegal duties

18  there later in 2011.  However, Victor You testified at trial

19  that he trained Mr. Xia as a coach before the Bandrich firm was

20  opened, which suggests Mr. Xia began his criminal activity upon

21  arrival.  Trial transcript 607.

22          We know from the trial testimony that Mr. Xia coached

23  at least Huai Guo Wu and Jason Xue to lie to the immigration

24  authorities.  At Mr. Xia's plea hearing he stated that he

25  coached some clients of the firm, whether it was based on falun

1    gong or based on the religion which suggests it was more than

2    just a few.

3         In addition, the government represents that during one

4    and a half years that Mr. Xia worked at the Bandrich firm, the

5    firm filed approximately 265 applications.  There was

6    overwhelming evidence at trial that these firms were fraud

7    mills.  Victor You and Meng Fe Yu testified that virtually all

8    of the Moslemi firm applications were fraudulent.  Trial

9    transcript 510 to 511.  1206-1207.  At the Bandrich firm, Jason

10   Shu interacted with Mr. Xia, Rachel Yang and Harry Liu, all of

11   whom demonstrated through their speech and conduct that they

12   engaged in asylum fraud on a regular basis.  I'm looking at

13   government exhibits 112T, 128T, 141T.

14        As a result, there is more than sufficient evidence

15   for me to find by preponderance of the evidence that Mr. Xia is

16   involved in at least 25 applications, subjecting him to the six

17   level enhancement.  It may well be that he was also involved in

18   more than 100 applications.  The problem there is, as I

19   mentioned a minute ago, is that he wasn't mentioned extensively

20   at trial and there simply isn't a great deal of evidence about

21   him in the record.  And as I said, if you want a Fatico hearing

22   you can have one, but I'll explain my thinking on the nine

23   level enhancement.

24        As I stated a moment ago, the evidence does support

25   the claim that Mr. Xia worked at both firms, so we're going to

1    focus on -- does not support that he worked at both firms so

2    we're going to just focus on Bandrich.

3            The government claims that other than the few

4    occasions on which Victor You went to the Bandrich firm to

5    assist him, Mr. Xia handled the coaching alone.  Looking at

6    Victor You's testimony, I don't think it says quite that much.

7    Indeed, it appears that Rachel Yang may have done some coaching

8    herself.  I'm looking at government exhibit 112T, 17 to 19, and

9    34, and she was at the firm for more than a year as I

10   understand it.

11           Other than Huai Guo Wu and Jason Xue, there's just a

12   lack of evidence linking Mr. Xia to over 100 specific

13   applications, you know, let alone fewer than that as a result,

14   although he may well be responsible for all of the

15   applications, all of the 265 of the Bandrich firm, there's

16   insufficient evidence on the record for me to say this case is

17   distinguishable from United States versus Walker.  In that case

18   the Second Circuit reversed the imposition of the enhancement

19   of the translator in an immigration law firm where there was a

20   derth of evidence connecting him to individual applications,

21   and it was likely that certain applications were attributable

22   to another employee.  191 F.3d at 339.

23           As I mentioned earlier, there were other people who

24   worked at the Bandrich firm, including Rachel Yang and Harry

25   Liu, although the extent to which they coached clients is

E88zxias                          Sentence

1    unclear from the record.

2              Given though that Mr. You -- Mr. Xia worked at the

3    firm for a year and a half, the firm was fraud mill, and Mr.

4    Xia indisputably played an important role at the firm as a

5    coach, I think it would be unreasonable to believe that he

6    worked with fewer than 25 clients.

7              In applying the six level enhancement, I'm not holding

8    him responsible for applications produced by his

9    coconspirators.  The record does not reflect, for example, the

10   extent to which he collaborated with other employees of the

11   firm or assisted them with their work.  As a result, the scope

12   of the criminal activity that Mr. Xia you agreed to jointly

13   undertake is unclear.

14             I note that although Mr. Xia raised this issue in his

15   submission, and the government has argued the point in its

16   supplement sentencing letter concerning Lillian Miao, the

17   government has not argued here that he should be held

18   responsible for the acts of his coconspirators.

19             So that's my ruling on the enhancement.

20             Next, Mr. Dratel.

21             MR. DRATEL:  I think the other --

22             THE COURT:  Yes.

23             MR. DRATEL:  I think the other paragraphs to which

24   there were suggested changes have all been incorporated,

25   they're mostly factual.

E88zxias                          Sentence

1          THE COURT:  I think that's right.  It was just about

2     the third point, right?

3          MR. DRATEL:  Right.

4          THE COURT:  Let's talk about the third point.

5          So, the government opposes the reduction of the third

6     point, which I believe deprives Mr. Xia of his ability to

7     receive -- a government motion is necessary -- isn't a

8     necessary prerequisite to the granting of the third point.  And

9     you know the law I'm citing, United States versus Lee.  Unless,

10    one, the government's refusal to move is based on an

11    unconstitutional motive or, two, a plea agreement leaves the

12    decision to move to the Government's discretion and the

13    government acts in bad faith.  There's no reason to believe the

14    government's acting in bad faith here.  They stated clearly on

15    the record back I believe in January, is that right, that for

16    anyone who didn't plead guilty by February 14th, they were

17    going to fight the third point.  They were not going to make a

18    motion.  And I think it's in their right not to make a motion

19    so I don't know what the basis would be for me to give him a

20    third point.

21          MR. DRATEL:  It's more of a 3553(a) issue, your Honor.

22          THE COURT:  Okay.  I'm aware of the fact that he pled

23    guilty, he's getting a two point reduction for it, but that's

24    where we are.

25          So other than that, I know some of the other comments

that you wrote in your letter have been addressed in the final

version of the presentence report.  Is there any other

objections?

        MR. DRATEL:  No, your Honor.

        THE COURT:  Okay.  Does the government have any

objections?

        MS. MERMELSTEIN:  No, your Honor.

        THE COURT:  The Court adopts the factual findings in

the report as modified today.  The presentence report will be

made a part of the record in this matter and placed under seal.

If an appeal is taken, counsel on appeal may have access to the

sealed report without further application to the Court.

        Mr. Xia, as I advised you at your plea hearing,

although courts are no longer required to follow the United

States Sentencing Guidelines, we're still required to consider

the applicable guidelines in imposing sentence.  And to do so

it's necessary that we accurately calculate the sentencing

range, so that's what I'm going to do now.

        So for the reasons stated above, in light of my

conclusion that the offense involved at least 25 to 99

documents, and Mr. Xia is entitled only to two acceptance

points and not three, I find that the offense level is 15,

defendant's criminal history category is one, and the

guidelines range is 18 to 24 months in prison with an

applicable fine of $4,000 to $40,000.  Do you all agree with

1   that?

2              MR. DRATEL:  Yes, your Honor.

3              MS. MERMELSTEIN:  Yes, your Honor.

4              THE COURT:  And just to confirm, neither party is

5   seeking a departure as opposed to a variance from this

6   guideline range, is that correct?

7              MS. MERMELSTEIN:  That's correct.

8              MR. DRATEL:  Correct, your Honor.

9              THE COURT:  All right.

10             In any event, I have considered whether there is an

11  appropriate basis for departure from the advisory range within

12  the guidelines system.  And while recognizing that I have the

13  authority to depart, I do not find any grounds warranting

14  departure under the guidelines.

15             Now I'll hear from the parties.  Would the government

16  like to be heard?  I read your letter, but I'm happy to hear

17  anything else you like to say.

18             MS. MERMELSTEIN:  Your Honor, I don't think I have

19  anything different to say than what's in our letter.  I think

20  there are really two points that need to be emphasized about

21  this defendant's sentence.

22             The first is that there are cases in which general

23  deterrence is not a realistic goal I think.  And there are

24  cases where it is.  And I think this is a case where general

25  deterrence serves an incredibly important function.  This is a

1  case that the government has been living with now for a number

2  of years, and that is going to continue at least civilly for

3  many many many more years.  Because the result of this

4  indictment and of the related indictments is that there is

5  something like 10,000 asylum applications that are essentially

6  presumptively fraudulent; that is, they were filed by law firms

7  that we have evidence didn't do anything but fraud, but there

8  needs to be an individual determination on each asylum

9  applicant as to what's going to happen.  It is a massive

10  undertaking that's going to go on for years.

11         This was an open secret in Chinatown.  This is a fraud

12  that was brazen and not very carefully sort of covered up, and

13  was known by all of the participants and was known by the

14  applicants.  And this case and the related cases has a lot of

15  attention in the Chinese press and what is happening at these

16  sentencings is being closely followed.  And I think that here a

17  sentence below the guidelines, a sentence that's not a

18  significant sentence sends a message to the law firms that are

19  still operating, that are still doing the same fraud, that it's

20  not that big of a deal, and it becomes a reasonable cost of

21  doing business to risk a short jail term in return for the

22  financial gains of this.

23         And so a significant sentence is necessary not just

24  for this particular defendant, but to deter this conduct and to

25  deter people from taking these jobs and continuing to engage in

1    this kind of fraud.

2              I think that that sentencing is appropriate for this

3    defendant as well.  And I think it's really -- the defendant

4    has argued in large part that he should be given some kind of

5    credit because he had this motivation to help people because of

6    his own difficult experiences in China.  And we don't know if

7    his representations about what happened to his family in China

8    are true.  We don't have access to records from China.  It's

9    odd to the government that in a case about people falsifying

10   records and getting letters of support to make claims about

11   these kind of experiences, all of the defendants in the case

12   seem to be claiming that they themselves are in that situation.

13   But, frankly, it's more troubling if he didn't -- if he did

14   have that kind of experience in China, and then used that

15   experience to perpetrate this fraud against the government;

16   that having come to the United States through that very

17   process, he then turned it around for financial gain.  And the

18   idea that he was motivated by sympathy for people who are in

19   the same situation as him is preposterous.  Because had the

20   applicants, had the clients of this law firm been in the same

21   situation as the defendant, they wouldn't have needed to commit

22   a fraud if they had actually suffered persecution based on the

23   there participating in Falun Gong or forced abortion.  And no

24   ones is disputing that those things are happening in China and

25   that's why we need asylum.  Then those people would have been

E88zxias                        Sentence

1   eligible for it.  This was a money maker.  They charged

2   immigrants -- your Honor heard the testimony at trial --

3   generally speaking, people of very limited means, thousands and

4   thousands of dollars to file these fraudulent applications.

5   And if the defendants were trading on their own personal

6   experiences to do that, it's almost worse than if they're just

7   making the whole thing up.  And so I think for that reason a

8   specific, a guideline sentence is also needed to punish this

9   particular defendant.  And so for those two reasons the

10  government submits that a guidelines sentence is appropriate in

11  this case.

12          THE COURT:  Thank you.

13          Mr. Dratel.

14          MR. DRATEL:  Thank you, your Honor.  And I know the

15  Court has read the submissions, so I'm not going to go through

16  in detail.  Just to concentrate on a couple of things.

17          One is remorse, which I think is clear and expressed

18  very articulately in Mr. Xia's letter, very clearly in the

19  letters also from his family, many of whom are here, his two

20  daughters, his wife.

21          THE COURT:  I want to thank you will for being here

22  and let you know I have read every one of the letters that you

23  submitted.

24          MR. DRATEL:  Right.  So, you know what's in there and

25  I'm not going to go through it.

1          I think the Government's argument about veracity of

2     his, of his own experience is -- I'm really not sure where it

3     comes from.  Because the notion that his wife would leave her

4     two kids and her family for four or five years come to the

5     United States as part of some fraud is really preposterous, and

6     it's really an affront to them and to her.  So that's all I can

7     say about it.  I mean, it's one thing to have proof.  It's

8     another thing to make a naked allegation that is really off the

9     charts in that regard.

10         He didn't make a lot of money on this.  He probably

11    made what he would have made had the entire operation been

12    legal legitimate.  He certainly didn't make any profit from it

13    in that regard.

14         On the issue of motivation, a little of a straw man in

15    the sense that the motivation part is about this, is that a lot

16    of people do things out of greed, a lot of people do things out

17    of love, lot of people do things for reasons that aren't

18    designed in some way to have a part of it that is motivated to

19    do something positive.

20         It is unimaginable to us, it is inconceivable to us

21    what life is like in certain countries, and in rural China and

22    other parts of China.  That's one of the things.

23         How many of us, in the prime of our lives, desparately

24    want to pick up, leave everything here and start over in a

25    completely strange environment where you don't speak the

1    language, you don't have any skills?  How many of us are going

2    to do that?  Why?  Why would we do that?  Why would so many

3    people do that?  That's why he wanted to help people.  That is

4    what he went through.  That is why motivation is important in

5    the context of punishment -- not in the context of what's legal

6    or illegal.  And if you put it in that perspective, it makes a

7    lot more sense than the way the government portrays it.

8            THE COURT:  I think the Government's point is, as you

9    know, is that if the motivation was really to help people who

10   are being persecuted, as opposed to people who wanted to get

11   away from poverty or some other legitimate reasons, he ended up

12   hurting those people, the legitimate asylum seekers through

13   this conduct, like I think everyone at that firm did.  Because

14   I think if you engage in this kind of fraud to the government,

15   it only ultimately ends up hurting legitimate asylum seekers.

16   That's what I understood the government's argument to be.  I

17   don't mean to mischaracterize it, but in any event.

18           MR. DRATEL:  I don't think Mr. Xia would disagree with

19   that at this point.  Obviously taking a longer view of it than

20   the just immediate issue of someone who wants to say in the

21   United States and knowing what, in that personal context,

22   knowing what it would mean for that person who is sitting

23   across from you has to go back.

24           General deterrence.  I have to deal with it my whole

25   career in this context.  Just, there is no proof.  I mean,

E88zxias                        Sentence

1    there is no empirical evidence about general deterrence, just

2    as an abstract issue in terms of -- you know, we've never seen

3    any -- studies show the opposite, that general deterrence is

4    not necessarily a factor in sentencing or about certainty of

5    punishment, rather than length and severity of punishment.

6    That's historical going back a millennium.

7              THE COURT:  You don't think in terms of deterrent

8    value there is any difference between incarceratory sentence or

9    non-incarceratory sentence and the length of it?

10             MR. DRATEL:  Only in very limited contexts, and not

11   for this defendant.  That's what I want to get to very

12   specific.

13             First argument is abstract which is really there is no

14   empirical evidence that general deterrence affects the unknown

15   proto defendant -- putative defendant out there somewhere who

16   don't even know what he's, what he's motivated by, what his own

17   compelling factors are that lead to crime.

18             But in the context of specifically in this case,

19   general deterrence, there has been dozens of other defendants

20   who have been sentenced and will be sentenced in the course of

21   this investigation and like investigations.  He should not be

22   the one who is saddled with general deterrence or where

23   everybody else gets a sentence that they deserves, but he gets

24   a sentence that somebody else deserves, who hasn't even

25   committed a crime yet.  I don't think his sentence is a message

1    to anyone.

2          There have been so many sentences in these cases.

3    There are lawyers who get time and there are lawyers who walk.

4    He's not -- a paralegal, he's the low -- the notion that the

5    ninth guy in a nine person indictment out of 30 or 40 or 50

6    defendants in the course of these multiple indictments were

7    going to be sentenced, that he's at the bottom of that level,

8    the notion that his sentence is going to motivate or is going

9    to be a factor in someone's behavior down the road, I think

10   just defies logic, practicality, experience, all of those

11   things.  And it defies justice in the context of why should he

12   be the one who has to have a general deterrence sentence,

13   whenever everybody else gets another type of sentence.  People,

14   like I say, lawyers -- you know, I mean I've sat through -- I

15   just by chance I happen to sit through one of the sentences in

16   a companion indictment in front of Judge Marrero for a lawyer

17   who -- he's not in that category, and his sentence will not be

18   a message to anyone.  The principals who were going to be

19   punished in a way that the Court sees fit and have been in

20   other cases, could be a different situation.  But for him it's

21   not a factor.  And the general deterrence to me, it is not a --

22   from just experience in not only in this case, but experience

23   in other cases, for this defendant the difference between an

24   incarceratory sentence or non-incarceratory sentence will make

25   no difference for the public at large.  It will not have an

E88zxias                          Sentence

1    impact.  The only impact it will have will be on him and his

2    family, the human impact toll it will take on him and his

3    family, in addition to the collateral consequences that he and

4    his family will endure and have endured and will continue to

5    endure now and forever because they're going to be in the

6    position where there are going to be prohibitions on seeing

7    each other, just practical nature of going back to China or

8    coming here.  It's just not going to be, it's just not going to

9    be possible.

10           So I really think that there isn't a value, other than

11   in a sort of technical application of either the guidelines or

12   other factors, there is no value of a prison sentence here.  It

13   doesn't accomplish anything tangible, positive or just I think

14   in the context of what we're trying to do in the system in a

15   system where we're recognizing that sentences that include

16   incarceration should have some value beyond just mechanistic

17   application of numbers to persons.

18           THE COURT:  Thank you.

19           Mr. Xia, I read your letter, but I'm happy to hear

20   anything you like to say today.

21           MR. DRATEL:  I think he'd prefer to rest on his

22   letter, your Honor.

23           THE COURT:  Is there any reason why sentence should

24   not be imposed at this time?

25           MS. MERMELSTEIN:  No, your Honor.

E88zxias                          Sentence

1              MR. DRATEL:  No, your Honor.

2              THE COURT:  As I stated, the guidelines range

3    applicable to this case is 18 to 24 months in prison.

4              Under the Supreme Court's decision in Booker and its

5    progeny, the guidelines range is only one factor that I must

6    consider in deciding the appropriate sentence.

7              I'm also required to consider the other factors set

8    forth in 18 United States Code 35, Section 3553(a) and I've

9    done so.

10             Mr. Xia stands convicted of one count of conspiracy to

11   commit immigration fraud.  During his time working as a

12   paralegal at the Bandrich firm, he played an important role in

13   a scheme to defraud immigration officials and courts into

14   granting asylum to ineligible applicants by coaching them to

15   lie.  He did this, he acknowledged at his plea, by advising

16   them how to tell government officials that they belonged to

17   Falun Gong or were persecuted for being a church member, when

18   that wasn't true.

19             This is a serious crime.  Although as he is described,

20   his role is limited, and it is true that he did not supervise

21   others, and notes that he did not profit specifically from the

22   fraudulent scheme, his role was nonetheless important.  And as

23   most, if not all of the applications filed in the Bandrich firm

24   were fraudulent, he did indeed profit from the fraudulent

25   scheme.

27

1       This kind of exploitation of our immigration system

2    endangers the public, compromises the integrity of the

3    immigration system, and harms legitimate asylum seekers as we

4    discussed a moment ago.

5       It also squanders taxpayer resources because DHS and

6    other law enforcement agencies devote significant time and

7    resources to investigating and attempting to prevent this type

8    of immigration fraud.

9       In terms of the factors set forth in 18 U.S.C. 3553(a)

10   it's particularly important in a case like this not only to

11   have the sentence promote respect for the law and provide just

12   punishment for the offense, but to afford adequate deterrence

13   to others who may seek to engage in this conduct.

14       And as to your argument, Mr. Dratel, I'm looking at

15   all of the 3553(a) factors.  Deterrence is one of them, and I'm

16   looking at all of them.

17       I have also considered Mr. Xia's personal and family

18   history.  At the age of 47 this is his first arrest and

19   conviction.  I've also read about the difficulties in his

20   childhood and how he was raised in extreme poverty in a home

21   that lacked basic necessities and how now he supports numerous

22   family members financially and otherwise.

23       I'll tell you, as I said a minute ago, I read each of

24   the letters from family members.  I don't have control over

25   deportation, which I think some of you may believe, but in any

event I read all of them.  It's clear to me from them that you

are a very important part of all of your family members lives,

that you are loved, and many of them described you as hard

working, filial, devoted, selfless.

So I considered the good and the bad, the good aspects

of your life and you as a person, and the bad in terms of the

crime that was committed here that I view as a very serious

crime here in our country, to help people lie to our country

day in and day out.  So I have considered all of that and am

ready to impose sentence.

It is the judgment of this Court that you be sentenced

to a term of one year and one day in prison, to be followed by

three years of supervised release.  I'm not imposing a fine

because I'm convinced that you can not afford to pay one, but

you must pay the special assessment of $100.

I believe that the this sentence is sufficient but not

greater than necessary to comply with the purposes of

sentencing set forth in the sentencing statute of 3553(a).

I'm also going to impose supervised release.  So feel

free to sit if you would prefer to do so.

The standard conditions of supervised release shall

apply, as well as the following mandatory conditions.  The

defendant shall not commit another federal, state or local

crime, shall not illegally possess a controlled substance;

shall not possess a firearm or destructive device.  The

E88zxias                          Sentence

1    mandatory drug testing condition is suspended based on the

2    Court's determination that the defendant poses a low risk of

3    future substance abuse.  And the defendant shall cooperate in

4    the collection of DNA as directed by the probation officer.

5            There are also certain standard, special conditions in

6    addition to the standard conditions of supervised release.  The

7    defendant shall obey the immigration laws and comply with the

8    directives of the immigration authorities in light of the

9    nature of this crime.  He is to report to the nearest probation

10   office within 72 hours of release from custody and be

11   supervised in the district of his residence.  So that is the

12   sentence.

13           Let's talk about forfeiture.  I've read the

14   Government's August 7th letter, motion for entry of a

15   preliminary order of forfeiture against Mr. Xia, as well as the

16   general motion concerning forfeiture filed back in June.  Mr.

17   Dratel, you didn't object.  Do you have any objection to the

18   forfeiture order?

19           MR. DRATEL:  No, your Honor.  But, you know, I just

20   think again, you know, the amounts are there, and I understand

21   what's law is.  So I understand it's different in the context

22   of forfeiture aspect of it but just, you know, should be

23   tailored -- I mean there is an Eighth Amendment element to

24   forfeiture as well, so.

25           THE COURT:  I'm aware of that.  I think the question

E88zxias                      Sentence

1   is is this something you want to brief and you want to be heard

2   on?

3               MR. DRATEL:  No, your Honor.

4               THE COURT:  You do not have an objection to it?

5               MR. DRATEL:  No, your Honor.

6               THE COURT:  All right.  Then I will sign off on the

7   proposed order with respect to Mr. Xia.  Just give me one

8   second, please.

9               MS. MERMELSTEIN:  Do you need a copy, your Honor?

10              THE COURT:  Yes, I would love an extra copy.  I know

11  it's here somewhere.

12              (Handing)

13              THE COURT:  Thank you.

14              All right, so I'm looking loot at Exhibit A of the

15  August 7th letter.  And in light of the fact there is a no

16  objection, I will sign this proposed preliminary order of

17  forfeiture money judgment, which makes clear on page seven that

18  as a result of offense charged in count one of the indictment

19  and in count one of the superseding indictment, money judgment

20  in the amount of $16,100,000 in United States currency shall be

21  ordered against the defendant.  And I'm not going to read the

22  rest of it because I understand, Mr. Dratel, you already

23  reviewed this, but I will sign off and that will be part of the

24  sentence.

25              Does either counsel know of any legal reason why the

E88zxias                         Sentence

1  sentence can not be imposed as stated?

2            MS. MERMELSTEIN:  No, your Honor.

3            MR. DRATEL:  No, your Honor.

4            THE COURT:  All right, the sentence as stated is

5  imposed.

6            Why don't we talk about surrender date.  Approximately

7  60 days from now, November 24th --does October 10th work as a

8  sentencing date -- surrender date, excuse me.

9            MR. DRATEL:  I think so, your Honor.  Obviously that

10 should be sufficient for designation.  But in case not, we'll

11 come back to the Court because there are advantages obviously

12 for self surrender rather than surrendering to the Marshals at

13 MCC in terms of credits and other things.  So that if he's not

14 designated by then, I may come back to the Court.

15           THE COURT:  All right.  If I don't hear from you, I

16 expect you him Mr. Xia either to surrender to the institution

17 that he's designated to before 2:00 p.m. on that date, which is

18 October 10th or to the Marshals by 2:00 p.m. by that date.  But

19 if you have a particular application in the event that he's not

20 designated by that time, I'm happy to consider that.

21           MR. DRATEL:  Thank you, your Honor.

22           THE COURT:  Mr. Xia's conditions of release shall

23 continue up until the time that he reports to begin his

24 sentence.  If he fails to report for his sentence, he may be

25 charged with another criminal offense.

E88zxias                         Sentence

1          That is the sentence of this Court.

2          Mr. Xia, you have a right to appeal your conviction

3   and your sentence, except to whatever extent you may have

4   waived that right as part of your plea agreement.  The notice

5   of appeal must be filed within 14 days of the judgment of

6   conviction.  If you are not able to pay the cost of an appeal,

7   you may apply for leave to appeal in forma pauperis.  If you

8   request, the Clerk of Court will prepare and file a notice of

9   appeal on your behalf.

10         Are there any other applications?

11         MR. DRATEL:  Yes, your Honor, for designation to an

12  institution as close as possible to New York City.

13         THE COURT:  Yes, I will make that recommendation.

14  I'll make that recommendation.

15         Anything from the government?

16         MS. MERMELSTEIN:  No, your Honor.

17         THE COURT:  Mr. Xia, I recognize this is a hard day

18  for you, a hard day for your family members.  And I just, I

19  want to tell you I read all of those letters as I said earlier.

20  You have so many people in your life who love you and respect

21  you, and this activity need not define you.  I'm hopeful that

22  after you serve your sentence, you will go on to lead a

23  productive and law abiding life, and I wish you luck with that.

24  Thank you.

25         MR. DRATEL:  Thank you, your Honor.
           (Adjourned)