

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*United States Courthouse*
*1 St. Andrews Plaza*
*New York, New York 10006*

October 1, 2014

**BY ECF**

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10006

        Re:    **United States v. Shuran Liu, a/k/a "Harry**,"
                12 Cr. 934 (RA)

Dear Judge Abrams:

      The Government respectfully submits this letter in connection with the sentencing of defendant Shuran Liu, a/k/a "Harry," (hereinafter referred to as "Harry Liu") which is scheduled for October 2, 2014 at 3:30 p.m., and in response to the defendant's letter dated September 18, 2014. ("Def. Ltr"). For the reasons set forth below, the Government respectfully submits that a sentence within the applicable Guidelines range of 41 to 51 months would be sufficient, but not greater than necessary to serve the legitimate purposes of sentencing.

    I.    **Background and Offense Conduct**

      A sentence falling within the advisory Guidelines range is appropriate given the defendant's conduct. For several years, the defendant acted as a leader in a scheme designed to trick immigration officials into granting asylum to people based on lies. The scheme operated out of two law firms, the Feng Ling Liu/Moslemi law firm and the Bandrich law firm. These firms would regularly submit false stories of persecution on behalf of their clients seeking asylum. These firms would also teach their clients how to tell the lies in their asylum application to immigration officials. Harry worked as an office manager at both the Feng Ling Liu/Moslemi law firm and the Bandrich law firm. As discussed in more detail below, it was Liu's job to decide which type of false persecution claim should be submitted on a client's behalf and which employee of the firm should work with the client on crafting that client's false story. Liu also prepped clients on how to lie in their asylum interview and at their individual hearing in immigration court.

Hon. Ronnie Abrams
September 30, 2014
Page **2** of **7**

Defendant's Work at the Feng Ling Liu/Moslemi Law Firm

      Harry Liu initially started working at the Feng Ling Liu/Moslemi law firm as a paralegal, but ultimately worked his way up to becoming one of the office managers and leaders of the firm. Although it is unclear when exactly he started working at the firm, evidence at the trial held against his co-defendants Feng Ling Liu, Vanessa Bandrich, and Rui Yang (the "trial"), suggests that he worked at the firm since at least 2008 up until 2010. As the Court is likely aware from the trial, the Feng Ling Liu/Moslemi law firm was run by Feng Ling Liu and her husband Yuchong Miao, a/k/a/ David. However, there is clear evidence that Harry Liu was also a leader in the firm.

      For example, Victor You, a former employee of the Feng Ling Liu/Moslemi firm, testified at the trial that Harry Liu was an "office manager" at the firm. (Tr. 502). The job of an "office manager" in the charged conspiracy is essentially what it sounds like. The office manager manages the law office. It is the office manager's job to make sure the false stories of persecution being written for the firm's clients are appropriate for the clients given their background. For instance, if a client is a young woman, an asylum claim based on forced abortion may be suitable for her, whereas a claim based on forced abortion may not be suitable for a client who is an elderly man. This is because it is less believable that an elderly man has suffered from having a forced abortion. In addition to assigning claims to clients, an office manager would also assign paralegals in the firm to work on particular cases. It would be the paralegals job to then work with the client on crafting the details of the false claim of persecution the office manager had selected for them. This is exactly what Harry Liu did at the Feng Ling Liu/Moslemi law firm. At trial, Victor You testified that Harry Liu was one of the individuals who would "meet with clients initially" to determine what false claim of persecution best suited them. (Tr. 732-733). Meng Fei Yu, another former employee of the firm, testified similarly. She stated that Harry Liu "conduct[ed] initial meeting with our new clients." (Tr. 1209). Yu went on to testify that after meeting with the firm's new clients, "Harry would assign those cases to a paralegal." (Tr. 1229). Thus, it is clear from the trial testimony that Harry Liu was not simply an employee at the Feng Ling Liu/Moslemi firm, but was one of the individuals in charge of the employees. Harry Liu was one of the bosses.

      Another example of Liu's leadership in the firm is the fact that he wrote a manual on how to properly write false asylum stories. The manual was for paralegals at the Feng Ling Liu/Moslemi firm to use as a guide when drafting false persecution stories for clients. Both Victor You and Meng Fei Yu testified to the existence of this manual at trial. Indeed, the following exchange took place between Victor You and a prosecutor for the Government on You's direct examination at the trial:

> Q: Let me ask you this. If you would skip that, where would you get the information for the part of the story that dealt with persecution?
>
> A: Because we have sample and we also have kind of story-writing instruction prepared by Harry.
>
> Q: When you say Harry, who is Harry again?

       A:       Harry Liu.  And I know I don't need to reference to sample writing because I'm really fluent in writing those stories; I just wrote it.

(Tr. 558).

You's testimony clearly establishes that Harry Liu created instructions for paralegals at the firm to follow when drafting false asylum stories.  Meng Fei Yu testified similarly.  As detailed below, she too had an exchange with a prosecutor from the Government on her direct examination in which she testified to the existence of Harry Liu's manual.  The exchange went as follows:

       Q:       If [clients] did not provide the details of the persecution, how did you know what to write?

       A:       When I started working, Ms. Liu asked me to look at old files, and we had some samples in our computers.

       Q:       Samples?

       A:       Yes.

       Q:       What do you mean by samples?

       A:       The samples were created by some people in the office, Harry or somebody else.  For each claim, each category of asylum claim there was a sample story, like the first paragraph introduction of this applicant and the second paragraph is what happened to this applicant and where they were arrested, how they left the country.

(Tr. 1235).

Harry Liu's creation of a manual for employees of the Feng Ling Liu/Moslemi law firm to follow when writing false persecution stories speaks to his position at the firm.  It is the leaders of a company who create manuals and other instructional tools for a company's employees to follow.  This is precisely what Harry Liu did because he was one of the leaders of the firm.[1]

Defendant's Work at the Bandrich firm

       Perhaps the best indication of Harry Liu's status as a leader in the Feng Ling Liu/Moslemi law firm is the fact that he was tasked by Feng Ling Liu to run the offshoot of that firm, the Bandrich law firm.  At trial, both Victor You and Meng Fei Yu testified that the Bandrich law firm was created to further the fraud scheme that existed at the Feng Ling Liu/Moslemi firm, and that Harry Liu was tapped to run that firm.

---

[1] In addition to his more leadership-oriented duties, there was also evidence at the trial that Liu prepared clients for their asylum interview and their individual hearings in immigration court.  (Tr. 600; 1256).

Hon. Ronnie Abrams
September 30, 2014
Page **4** of **7**

      Victor You testified that "[i]n the beginning of 2010, Harry [Liu] and Yolanda[2] told us they were about to open the new firm, and they were looking for new office . . . . And but in the beginning, they didn't have the lawyer. And later on, they decided to use Vanessa [Bandrich]. And they found office at a building just across the street and they moved in in – probably in April or May 2010." (Tr. 605). You went on to testify about the reason Harry Liu was heading up the new firm, stating "One reason is for safety. Because opening a new firm, which means we can submit application under different name, which will take the heat from you. And another reason is we have so many clients . . . We needed new firm to submit a part of our application, which we are unable to submit under the original name." (Tr. 605-606). To put it simply, Feng Ling Liu chose Harry Liu to open up the Bandrich firm so that they and Yuchong Miao, a/k/a "David," could continue to run the asylum fraud scheme without being detected by law enforcement. Harry Liu who was chosen to be the one to run the offshoot firm because he was one of the leaders in the conspiracy.

      Meng Fei Yu testified similarly, saying that "In early 2009 Ms. Liu [Feng Ling Liu] changed the firm's name under choice, Moslemi. In 2011 she asked Harry [Liu] to create a new firm." (Tr. 1271). She testified that she understood that the reason a new firm was being opened was because "Ms. Liu [did not] want to attract the government's attention because the firm [was] so big, they [had] so many cases." (Tr. 1272). Yu went on to testify that prior to the opening of the Bandrich firm, Yu remembered Troy Moslemi, the lawyer whom the Feng Ling Liu/Moslemi firm had been named after since 2009, discussing with Harry Liu how he was "scared" of the government shutting down the Feng Ling Liu/Moslemi firm. (Tr. 1272). The fact that Troy Moslemi would speak to Harry Liu about his fears also speaks to Harry Liu's leadership position in the conspiracy. Moslemi would likely not have such a frank conversation about the criminality of the firm with someone who was not a leader in the firm, but merely a paralegal, as the defendant claims.

      There was also testimony at the trial showing that not only did Harry Liu create the Bandrich firm, but he also ran it. For example, at the trial, Victor You told the story of how after the Bandrich firm had opened, Harry Liu asked him to come and train one of the new employees at the firm, Shu Feng Xia, a/k/a "Kevin." He stated, "Before they opened their new firm, Kevin was trained as a coach in our firm, by Lucy and Lillian and by me, to become a coach. When they – after they opened their new firm, Kevin still inexperienced in preparing people. So Harry and Yolanda called me couple of times to show to Kevin how to prepare client for asylum interview." (Tr. 607). Harry Liu was seeking out training for one of his employees because he was responsible for the success of the Bandrich firm and wanted to make sure his employees were performing their tasks properly. Again, Harry Liu was acting as a leader in the conspiracy because he was one.

      Another Government witness, Jian Xue, also testified at the trial about Harry Liu's leadership at the Bandrich firm. He testified that when he went to the Bandrich firm posing as an applicant on behalf of the Government, it was Harry Liu who explained to him what type of persecution claim he should use in his application. He stated that Harry Liu "introduced [him] to

---

[2] You testified that Yolanda was married to Harry Liu and assisted in opening the Bandrich firm. (Tr. 761).

the three types of ways to apply for the political asylum". (Tr. 1745). He said, "The first one is one child policy. The second one is religion. And then another one is Falun Gong." (Id.) He went on to testify that Harry Liu told him that "Falun Gong is more suitable to [him] . . . . Because of [his] age." (Tr. 1746). Xue also testified that it was Harry Liu who discussed with him how much it would cost him to apply for asylum through the Bandrich firm and Liu had him sign a contract with the firm. (Tr. 1748). That's because Harry Liu ran the firm. He made sure the clients of the firm got the service they needed, the employees of the firm did their job properly, and the firm got paid. Perhaps the clearest evidence of this is the fact that approximately $25,000 in cash was found in Harry Liu's office when the Bandrich firm was searched by law enforcement agents at the time of Harry Liu's arrest.

## II.   Guidelines Analysis

On or about January 28, 2014, the parties appeared before the Court for a pretrial conference. The Government stated on the record that the Government would not move for an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b), for any defendant whose plea was entered after February 14, 2014. (January 28, 2014 Tr. at 17-18).

On or about March 6, 2014, the Government provided Liu with a Pimentel letter. The Pimentel letter calculated a base offense level of 11. (PSR ¶ 5). A 9-level increase resulted because the offense involved more than 100 fraudulent immigration documents. (Id.). A 4-level increase resulted because the defendant was an organizer or leader and the criminal activity involved five or more participants or was otherwise extensive. (Id.) The Pimentel letter also contemplated that if the defendant clearly demonstrated his acceptance of responsibility, a 2-level reduction would be warranted. Finally, the Pimentel letter stated that an additional 1-level reduction would be warranted if "the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently." The Pimentel letter concluded that the defendant was in Criminal History Category I. (PSR ¶ 5). The defendant would therefore be at offense level 21 if he received the additional 1-level reduction, and at level 22 without the reduction.

The defendant did not enter a plea prior to February 14, 2014. Instead, on March 7, 2014, two weeks prior to trial, the defendant pled guilty. (PSR ¶ 5). As a result of the late plea, the defendant forfeited the additional 1-level reduction for acceptance of responsibility and has an offense level of 22. At offense level 22, and Criminal history category I, the defendant's applicable Guidelines range is 41 to 51 months' imprisonment.

## III.   Defendant's Arguments

In Harry Liu's letter to the Court dated September 18, 2014 ("Defendant's Sentencing Letter"), the defendant makes two primary appeals for leniency in his sentencing: (1) the defendant was not a leader or supervisor in the conspiracy and therefore a four-level leadership enhancement is not warranted; and (2) the Government has not established the defendant's connection to 100 or more fraudulent immigration filings therefore the sentencing enhancement related to the number of fraudulent documents is not warranted. For the reasons explained below, both of Harry Liu's arguments should be rejected.

Hon. Ronnie Abrams
September 30, 2014
Page **6** of **7**

      The defendant argues in his sentencing letter that "[t]he government has presented no evidence that Mr. Liu was a leader or supervisor while working at Moslemi and Associates" and that "there is little evidence of Mr. Liu's role as a leader, organizer, manager or supervisor at Bandrich and Associates." (Def.'s Ltr. 2-3). The defendant is clearly mistaken. As noted above, multiple witnesses testified at the trial that Harry Liu was a leader at both the Feng Ling Liu/Moslemi firm and the Bandrich firm. Indeed, Victor You testified that Harry Liu was the "office manager" of the Feng Ling Liu/Moslemi firm. In addition, both Victor You and Meng Fei Yu testified to the high level of responsibility Liu held at that firm, including the task of conducting the initial interview of clients and deciding which paralegal at the firm would work on which cases. (Tr. 732, 733, 1209, 1229). You and Yu also testified to the fact that Harry Liu essentially wrote the manual on how to properly conduct fraud at the Feng Ling Liu/Moslemi firm to help train the firm's employees. (Tr. 558, 1235). All of this clearly speaks to the fact that Harry Liu was a leader in the Feng Ling Liu/Moslemi firm, not simply an employee. In fact, as mentioned earlier, he was such a great leader of the firm that he was tasked by his fellow leaders, Feng Ling Liu and Yuchang Miao, a/k/a "David," with creating the firm's offshoot firm, the Bandrich firm. Both Victor You and Meng Fi Yu testified that it was Harry Liu who created the Bandrich firm, not his co-defendant Vanessa Bandrich, irrespective of the fact that the firm bears Bandrich's name. (Tr. 605, 1271). Moreover, Jian Xue, a government witness who posed as an asylum applicant at the Bandrich firm, testified that it was Harry Liu who explained to him which false claim of persecution he should use and how much it was going to cost him to have the firm help him file his false application. (Tr. 1748). Accordingly, there has been more than enough evidence presented to show that Harry Liu was a leader in the charged conspiracy, and as such, is fully deserving of a four-level leadership enhancement.[3]

      The defendant also argues that "[t]he government has not established Mr. Liu's connection to 100 or more fraudulent immigration filings," therefore "the 100 documents enhancement should not apply to Mr. Liu." (Def.'s Ltr. 5). The defendant is again incorrect. The Government has clearly established the defendant's connection to hundreds of fraudulent immigration filings. At trial, Ashley Caudill-Mirillo, the Deputy Director of the New York Asylum Office, testified that from 2010- 2012, the Bandrich law firm filed approximately 480 asylum applications. (Tr. 155). It is the Government's view that virtually all, if not all, of the applications filed by the Bandrich firm were fraudulent. This is based on the fact that there was testimony from multiple witnesses at trial that members of the conspiracy generally did not file asylum applications that were not fraudulent. Victor You testified that based on his experience working at the Feng Ling Liu/Moslemi firm, "less than 20" of the cases he worked on were

---

[3] As a part of the defendant's argument that he does not deserve four leadership points, he points out the fact that the Probation Office "only applies a two-level aggravating role adjustment for Ms. Bandrich, the principal of the firm." (Def.'s Ltr. 3). This fact, however, is unhelpful to the defendant. It is obvious that the Probation Office determined that Harry Liu deserves more leadership points than Vanessa Bandrich because Liu clearly was more of a leader at the firm than Bandrich. As stated earlier, Harry Liu created the Bandrich firm, not Vanessa Bandrich. In fact, Victor You's testimony at trial makes it clear that Harry Liu created the firm before it was even decided that Vanessa Bandrich would work there. You stated that "[i]n the beginning of 2010, Harry [Liu] and Yolanda[3] told us they were about to open the new firm, and they were looking for new office . . . . And but in the beginning, they didn't have the lawyer. And later on, they decided to use Vanessa [Bandrich]. And they found office at a building just across the street and they moved in in – probably in April or May 2010." (Tr. 605).

based on events that actually happened, and even those cases were fraudulent as they were changed in some way to increase the likelihood that they would be approved by the immigration office. (Tr. 510). Meng Fe Yu testified similarly, stating that only "ten percent" of the cases she worked on at the Feng Ling Liu/Moslemi firm were based on actual events, and that even those cases were sometimes altered to increase the likelihood that the applicant would gain asylum. (TR. 1206- 1207). Given that the Bandrich firm was an offshoot of the Feng Ling Liu/Moslemi firm, it is more than reasonable to infer that the Bandrich firm operated in precisely the same manner. Indeed, as much was proven by the testimony of Jian Xue, as noted earlier, who testified to being told by Harry Liu that he should claim to be a follower of Flaun Gong, even though he did not tell Harry Liu that he was a follower of Falun Gong. (Tr. 1746). That being said, as the leader of the Bandrich firm, Harry Liu is connected to all of the fraudulent applications filed by the Bandrich firm and therefore the sentencing enhancement related to 100 or more fraudulent immigration filings is warranted. This is consistent with the Second Circuit's holding in United States v. Walker, 191 F.3d 326, 339 (2d Cir. 1999), where the Circuit Court found that the owner of an immigration law firm that filed fraudulent asylum applications was responsible for all of the fraudulent applications submitted by his firm.[4]

## IV.    Conclusion

For the foregoing reasons, the Government respectfully submits that the Court impose a sentence within the Sentencing Guidelines range of 41 to 51 months, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

        Respectfully submitted,

        PREET BHARARA
        United States Attorney

By: _____/s_____
        Robert L. Boone
        Assistant United States Attorney
        Southern District of New York
        (212) 637-2208

cc: Cesar de Castro, Esq.

---

[4] Harry Liu is also connected to fraudulent applications filed by the Feng Ling Liu/Moslemi firm as he chose persecution claims for clients, wrote a manual that influenced the creation of false stories, and prepped clients on their false stories. At trial, Ms. Caudill-Mirillo also testified that the Law Offices of Feng Ling Liu filed approximately 900 asylum applications from 2007 to 2009, and that its successor firm, Moslemi & Associates, filed approximately 430 applications from 2009 to 2012. (Tr. 154, 155).