

|  | U.S. Department of Justice |
|---|---|
|  | *United States Attorney*<br>*Southern District of New York* |

*United States Courthouse*
*1 St. Andrews Plaza*
*New York, New York 10006*

October 24, 2014

**BY ECF**

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10006

        Re:    **United States v. Rui Yang, a/k/a "Rachel**,"
              12 Cr. 934 (RA)

Dear Judge Abrams:

      The Government respectfully submits this letter in connection with the sentencing of defendant Rui Yang, a/k/a "Rachel," (hereinafter referred to as "Rachel Yang") which is scheduled for October 28, 2014 and in response to the defendant's letter dated October 14, 2014. ("Def. Ltr"). For the reasons set forth below, the Government respectfully submits that a sentence within the applicable Guidelines range of 33 to 41 months would be sufficient, but not greater than necessary to serve the legitimate purposes of sentencing.

    I.    **Background and Offense Conduct**

      A sentence falling within the advisory Guidelines range is appropriate given the defendant's conduct. For a little over a year, the defendant participated in a scheme designed to trick immigration officials into granting asylum to people based on lies. The scheme in which the defendant participated was based out of the law firm Bandrich & Associates (the "Bandrich Firm"), located in the Chinatown section of New York City. The Bandrich Firm was an immigration fraud mill. It submitted hundreds of fraudulent asylum applications in less than 3 years. The defendant was an office worker at the Bandrich Firm. Her job title was undefined because she assisted the fraud in many ways.

      For example, at her trial, a former client of the Bandrich Firm, Haui Guo Wu, testified to the following: (1) Yang was one of the first people he met upon entering the Bandrich firm (Tr. 859); (2) Yang sat at a desk located in the general area of the law firm (Tr. 872, 873); (3) Yang made up a false story of persecution for Wu (Tr. 864); (4) Yang explained to him how to draft the false story (Tr. 864); (5) Yang edited the false story for him (Tr. 865); (6) Yang instructed him to attend church to make his false story of being a persecuted Christian more believable (Tr. 866); (7) Yang provided him with hints on how to be a Christian (Tr. 903); (8) Yang wrote

Hon. Ronnie Abrams
October 24, 2014
Page **2** of **4**

letters that purported to be from his family and friends, falsely claiming that Wu was a persecuted Christian (Tr. 868); and (9) when Wu expressed concern about his false application, Yang told him "there are so many people who are applying for that type of cases, it's impossible for the church to find out about you" (Tr. 870,871).  Thus, Yang was involved in almost every aspect of preparing Wu's false asylum application.

Another Government witness, Jason Xue, had a similar experience with Yang.  Xue posed as an asylum applicant on behalf of the Government at the Bandrich firm.  He testified at her trial to the following: (1) Yang gave him a false persecution story for him to copy in his own handwriting (Tr. 1750); (2) Yang gave Xue a letter to have someone else copy that falsely claimed he practiced Falun Gong (1752); and (3) Yang told him to have letters falsely claiming he practiced Falun Gong copied on Chinese paper and with Chinese pens to give the impression that they came from friends and relatives in China (Tr. 1755).  Therefore, Yang was also involved in various aspects of Xue's fraudulent asylum application.

In sum, unlike some of her co-defendants, Yang's involvement in the fraud was not isolated to one particular task, but involved multiple tasks.  As such, she was positioned to be involved in most, if not all, of the fraudulent applications filed by the Bandrich firm.

II.   **Defendant's Arguments**

In Yang's letter to the Court dated October 14, 2014 ("Defendant's Sentencing Letter"), the defendant makes two objections to the Guidelines calculation as set forth in the defendant's Pre-sentence Report: (1) a six-point sentencing enhancement pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2L.2.1(b)(2)(B) is not deserved as there was no evidence at trial showing that Yang was responsible for between 25 and 99 fraudulent applications; and (2) pursuant to U.S.S.G. § 1B1.3(a)(1)(B), the defendant should have been given a minor role adjustment.  The Government disagrees with both of the defendant's arguments for the following reasons.

*Sentencing Enhancement*

As Your Honor has noted in the sentencing of Yang's co-defendants, the Bandrich Firm was indeed a fraud mill.  Evidence offered at the defendant's trial showed that nearly all, if not all, of the asylum applications submitted by the Bandrich firm were fraudulent.  Since the firm's inception in May of 2010, up until 2012, the firm filed nearly 500 asylum applications.  (Tr. 155).  Yang concedes that she started working at the Bandrich Firm in or about October 2011, approximately a year and a half after the firm opened, up until her arrest in December 2012.  (Def.'s Ltr. 4).  Therefore, given the likelihood that well over 100 hundred applications were filed during the time period the defendant worked at the Bandrich firm, the likelihood that most, if not all, of those applications were fraudulent, and the likelihood that the defendant was involved in most, if not all, of those applications, it is reasonable and proper for the Court to infer from the evidence that the defendant worked on more than 100 fraudulent documents at the Bandrich Firm.  As such, a 9-point sentencing enhancement, pursuant to § 2L.2.1(b)(2)(B), is appropriate.  Alternatively, at a minimum, a 6-point sentencing enhancement is proper.  Not only can that be inferred from testimony offered by the Government at the defendant's trial, it is

Hon. Ronnie Abrams
October 24, 2014
Page **3** of **4**

proven by the documents made available to the defendant in discovery. In a search of just some of the boxes of documents the Government recovered from the Bandrich Firm, the Government has found twenty-five documents directly linked to the defendant. The Government will bring those documents to the defendant's sentencing for the Court's review. Accordingly, a sentencing enhancement of no less than 6-points, pursuant to U.S.S.G. § 2L.2.1(b)(2)(B), should be applied to the defendant's offense conduct.

*Minor Role Adjustment*

As the defendant herself concedes, the defendant worked at the Bandrich firm as a full-time employee. Given the nature of her job, that means she helped perpetuate the firm's fraud every day for over a year until she was arrested. That is not behavior consistent with that of someone who is a minimal participant in a conspiracy and therefore deserving of a minor role adjustment pursuant to U.S.S.G. § 3B1.2(a). Indeed, that is behavior consistent with someone who is very much an active participant in a conspiracy. This is especially true here given that the work performed by the defendant was at the core of the conspiracy. As demonstrated above, Yang had hands-on involvement in the preparation of the fraudulent documents at issue in this case. To the extent the defendant argues that the Government was willing to give her a minor role adjustment in a plea agreement, and thus must agree that the defendant was a minimal participant, she is mistaken. First, the Government is obviously not bound by an agreement that neither party entered into. Second, the plea offer the Government made to the defendant was made in or about Decmeber 2013, several months before the defendant's trial began in March 2014. As often happens in cases, the Government continued its investigation into the defendant's conduct and more evidence was discovered. In particular, the potential testimony of Haui Guo Wu was discovered. Indeed, in Yang's attorney's cross-examination of Wu, he pointed out that Wu did not enter into a non-prosecution agreement with the Government until February 26, 2014, three weeks before the defendant's trial. (Tr. 916.) In light of the evidence that was offered at the defendant's trial, it is clear that Yang was anything but a minimal participant in the charged conspiracy. As such, a minor role adjustment is not warranted.

### III.  Conclusion

For the foregoing reasons, the Government respectfully submits that the Court impose a sentence within the Sentencing Guidelines range of 33 to 41 months, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    Respectfully submitted,

    PREET BHARARA
    United States Attorney


By: _____/s_____
    Robert L. Boone
    Assistant United States Attorney
    Southern District of New York