UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SHU FENG XIA,

                          Petitioner,

           -against-                                        No. 14-cv-10029 (RA)
                                                           No. 12-cr-934-9 (RA)


UNITED STATES OF AMERICA,

                          Respondent.
--------------------------------------------------------X




**SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITIONER, SHU FENG XIA'S *PRO SE* MOTION TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE PURSUANT TO 28 U.S.C. SECTION 2255**

Randa D. Maher, Esq.
*Counsel for Shu Feng Xia*
Maher & Pittell, LLP
14 Bond Street - Suite 389
Great Neck, New York 11021
(516) 487-7460

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 3

    A.    Relevant background .......................................................................... 3

    B.    Defense counsel's failure to inform the Court of the
            immigration consequences of a sentence of one year or more ................................. 4

    C.    Mr. Xia's motion to correct his sentence under 28 U.S.C. Section
            2255 based on his attorney's ineffective assistance at sentencing ........................... 7

    D.    The sentences of less than one year' imprisonment
            imposed on Mr. Xia's co-defendants ..................................................................... 10

            *1.  Guo Qin Miao's Sentence* ............................................................... 10

            *2.  Riu Yang's Sentence* ....................................................................... 14

            *3. Wen Ting Zheng's Sentence* ........................................................... 15

    E.    The renewal of Mr. Xia's *pro se* 2255 motion........................................................ 16

LEGAL ARGUMENT.................................................................................................... 17

POINT I

    MR. XIA'S PETITION UNDER 28 U.S.C. § 2255 SHOULD BE
    GRANTED DUE TO THE INEFFECTIVE ASSISTANCE OF HIS
    COUNSEL AT SENTENCING........................................................................ 17

    A.    Counsel's Failures to Understand the Immigration Consequences of
            Mr. Xia's Conviction and to Inform the Sentencing Court of These
            Consequences Constitute Ineffective Assistance of Counsel ................................. 18

    B.    Mr. Xia Was Prejudiced by His Attorney's Deficient Representation at
            Sentencing As There Exists A Reasonable Probability That, But for Counsel's
            Unprofessional Errors, Mr. Xia Would Have Received a Lesser Sentence............. 23

POINT II

    AS THE SENTENCE OF ONE YEAR AND A DAY IMPOSED ON MR. XIA
    WAS BASED ON ERROR ARISING FROM COUNSEL'S OMISSIONS AT
    SENTENCE, THIS COURT HAS THE AUTHORITY TO VACATE AND
    RESENTENCE MR. XIA................................................................................................... 28

CONCLUSION....................................................................................................................... 30

# TABLE OF AUTHORITIES

Page

## Cases

*Baesho v. United States*, 660 F.Supp. 149 (E.D.N.Y. 1987) ........................................28

*Burley v. Cabana*, 818 F.2d 414 (5th Cir. 1987) ....................................21, 28

*Clark v. Memolo*, 174 F.2d 978 (U.S.App.D.C. 1949) .................................29

*Delgadillo v. Carmichael*, 332 U.S. 388 (1947) ...........................................19

*Mandarino v. Ashcroft*, 290 F.Supp.2d 253 (D.Conn. 2002)...........................21-23, 26

*McMann v. Richardson*, 397 U.S. 759 (1970) ........................................17, 19

*Michel v. Louisiana*, 350 U.S. 91 (1955)....................................................22

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ..............................................19, 22

*Rizzo v. United States*, 821 F.2d 1271 (7th Cir. 1987)....................................28

*Shushansky v. United States*, 93 CV 5632, 1994 WL 716228
   (E.D.N.Y. Dec. 21, 1994)........................................................ 20, 23, 26-28

*Strickland v. Washington*, 466 U.S. 668 (1984) .................................. 17, 20, 22-23, 27

*United States v. Thavaraja*, 740 F.3d 253 (2d Cir. 2014)................................13, 15, 25

*United States v. Castro*, 26 F.3d 557 (5th Cir. 1994) ....................................20, 23

*United States v. Golden*, 854 F.2d 31 (3rd Cir. 1988) ....................................21

*United States v. Stevens*, 851 F.2d 140 (6th Cir. 1988) ................................21, 28

*United States v. Walker*, 17 F.R.D. 5 (S.D.N.Y. 1955) .................................29

*United States v. Worlumarti*, 13 CV 6202, 2014 WL 1783071 at *5
   (E.D.N.Y. May 5, 2014)......................................................19, 23

*Williams v. Taylor*, 529 U.S. 392 (2000) ...................................................22

## Statutes

18 U.S.C. § 1546(a) ...................................................2, 3, 10, 18

18 U.S.C. § 371........................................................1

28 U.S.C. § 2255 ...................................................................................................... *passim*

8 U.S.C. § 1101(a)(43)(P)(U) ..................................................................................18

8 U.S.C. § 1227(a)(2)(A)(iii) ...................................................................................21

8 U.S.C. § 1251(b) ...................................................................................................20

**Rules**

Federal Rules of Criminal Procedure Rule 36 .........................................................28

USSG § 2L2.1(b)(2)(B) ..............................................................................................5

USSG § 2L2.1(b)(2)(C) ..............................................................................................5

## PRELIMINARY STATEMENT

On March 7, 2014, the Petitioner, Mr. Shu Feng Xia, pleaded guilty to one count of conspiracy to commit immigration fraud (18 U.S.C. § 371), in a matter prosecuted in this Court under Indictment No. 12-cr-934-RA.  On August 8, 2014, he was sentenced to one year and a day in prison, followed by three years' supervised release.  He is scheduled to be released on August 23, 2015.

Mr. Xia immigrated to the United States from China on June 11, 2010, and thereafter, became a legal permanent resident (PSR at ¶ 86).[1] In China, Mr. Xia grew up poor, and lived with his family in a three-room house, with a thatched hay roof and a dirt floor, without indoor plumbing or electricity. His education was limited to completing junior high school. (PSR at ¶¶ 83, 94).   His wife fled China before he did, arriving in the U.S. in 2006, in order to escape persecution from China's forced sterilization policy after having two daughters. *Id.*  Until his incarceration, Mr. Xia resided with his wife and daughters in the basement of a home owned by Shuran Liu, his brother-in-law (and co-defendant), located in Queens, New York  (PSR at ¶¶ 86-87).  Mr. Xia's wife and their youngest daughter, a 14-year-old high school student, are U.S. citizens.  His older daughter, a 22-year-old college student, is a legal permanent resident who has applied for U.S. citizenship (Exhibit D, p.2; Exhibit F, pp.8, 20)(PSR at ¶ 86).

Because Mr. Xia was sentenced to a term of imprisonment of at least one year, an immigration court may consider his offense to be an aggravated felony, making his removal a very likely result, and rendering him ineligible for most forms of relief from deportation otherwise

---

[1]Numbers in parentheses preceded by "PSR" refer to pages of the revised Pre-sentence Investigation report, and third addendum, dated February 18, 2015.

1

available (Exhibit I, p. 3).[2]  His almost certain deportation to China will permanently separate Mr. Xia from his family forever, a punishment "far greater than the one year" of his incarceration (Exhibit E, p. 1). Despite the fact the length of Mr. Xia's sentence had the ability to significantly impact the immigration removal proceedings in his future, his attorney, Mr. Joshua Dratel, failed to advise the Court of this consequence prior to the imposition of sentence, either in his sentencing submission or during Mr. Xia's sentencing proceeding (Exhibits F and G).  Mr. Xia maintains that he brought this very concern to Mr. Dratel's attention prior to entering his guilty plea, but that it went unheeded (Exhibit E, p. 2). It is respectfully submitted that had counsel informed the Court of this critical immigration consequence prior to its imposing sentence, the Court would have considered this factor and sentenced Mr. Xia to a term of less than one year -- as it did when it later sentenced Mr. Xia's co-defendants, Guo Qin Miao on October 7, 2014 (Exhibit J), and Riu Yang on October 28, 2014 (Exhibit K).  In Mr. Xia's case, this same consideration warranted sentencing him to a ten-month term of imprisonment or, at a minimum, to a sentence of two days less time than the term imposed. In light of his attorney's ineffective assistance at sentencing, and for the reasons that follow, as well as those previously set forth by Mr. Xia in his *pro se* petition, it is respectfully requested that Mr. Xia's motion pursuant to 28 U.S.C. § 2255 be granted.

---

[2]The Government has acknowledged that an alien may be deemed an aggravated felon based on his participation in a conspiracy to commit immigration document fraud (18 U.S.C. § 1546(a)) if the Court imposes a sentence of at least a year (Exhibit H, p.2).

2

## STATEMENT OF FACTS

### A.      Relevant background

Petitioner, Shu Feng Xia ("Kevin"), together with co-defendants, Feng Leng Liu ("Karen"), Vanessa Bandrich, Shuran Liu ("Harry"), Yuchang Miao ("David"), Rui Yang ("Rachel"), and Guo Qin Miao ("Rachel" a/k/a "Sunny"), was charged in a single count indictment (S2 12-cr-934-RA), with conspiring to commit immigration fraud by submitting fraudulent asylum applications to the United States Citizenship and Immigration Services on behalf of clients of two law firms which resulted in the clients receiving Form I-94's in violation of 18 U.S.C. § 1546(a).  Shortly after Mr. Xia's arrest on December 18, 2012, Mr. Dratel was appointed, pursuant to the CJA Act, to represent him on January 7, 2013. *See* No. 12-cr-934-RA, Dkt. 32, 45.  Mr. Dratel continued to represent Mr. Xia through sentencing.

As described in the PSR at pages 6-15, the Asylum Fraud Scheme involved basically three categories of coconspirators: the lawyers (Feng Ling Liu, Vanessa Bandrich, and later Feng Li); the office managers (Yuchang Miao, Shuran Liu and Guo Qin Miao); and the paralegals (Riu Yang, Mr. Xia and Wen Tin Zheng).  Of these individuals, Feng Ling Liu, Yuchang Miao, and Shuran Liu were found to be leaders and organizers and Bandrich was a supervisor.  Mr. Xia and the remaining coconspirators (Yang, Guo Qin Miao, Li and Zheng) were each found responsible only for their respective involvement.

3

**B.** **Defense counsel's failure to inform the Court of the immigration consequences of a sentence of one year or more**

According to Mr. Xia, <u>sometime in January 2014</u>, he met with Mr. Dratel at his office. With the assistance of a female, Mandarin-speaking interpreter, Mr. Xia "related his thinking and worries" to Mr. Dratel, and asked "how the American law would treat my kind of case, how one can be found guilty and be sentenced, as well as the charges and evidence provided by the government, plus the degree to which the court will sentence me correspondingly" (Exhibit E, p.1). Mr. Xia also expressed his concern to Mr. Dratel that "[i]f my sentence exceeds 12 months, I most definitely will be sent back to China by the government." According to Mr. Xia, Mr. Dratel promised to arrange for him to meet with a professional immigration lawyer "to provide me assistance regarding immigration issues." However, he failed to do so. *Id.* Later, when Mr. Xia again questioned Mr. Dratel about the deportation consequences of a sentence of more than 12 months, Mr. Dratel allegedly told him "that he would convey my immigration problem to the court at sentencing." *Id.*

<u>On March 7, 2014</u>, Mr. Xia appeared before the Court and pleaded guilty to the one-count indictment.

By letter dated <u>July 25, 2014</u>, Mr. Dratel submitted a Sentencing Letter with exhibits, pursuant to which he requested Mr. Xia receive a sentence that did not include incarceration (Exhibit F). Although counsel mentioned the collateral consequence of possible deportation in the reasons he advanced in support of a non-jail sentence, he failed to inform the Court that a sentence of one year or longer would have a greater impact on the immigration and removal proceedings in Mr. Xia's future, and strengthen the prospect of his deportation (Exhibit F, pp. 16-17). A translated letter to the Court from Mr. Xia was annexed to counsel's submission, as Exhibit "2" (Exhibit F, pp. 27-28).

4

On August 8, 2014, Mr. Xia appeared for sentencing. The Court found his offense level was 15, his criminal history category I and his sentencing guidelines range was 18 to 24 months. He received a sentence of one year and one day, followed by three years of supervised release (Exhibit G, pp. 16, 26-28). The PSR confirmed that Mr. Xia's role in the conspiracy had been as a paralegal, for which he was paid $350 per week ($70 per day)(PSR at ¶¶ 54-55, 98). The Government expressly acknowledged that unlike his co-defendant Rachel Yang (Riu), Mr. Xia was not a story writer. "That was a job that was really done by Rachel Yang in connection with Harry Liu" (Exhibit G, p. 8).

Prior to the Court imposing sentence, Mr. Dratel reiterated his written objections to the PSR's calculation of Mr. Xia's advisory Sentencing Guidelines. These objections included the application of a 9-point enhancement for 100 or more fraudulent documents pursuant to USSG § 2L2.1(b)(2)(C)(Exhibit G, pp. 3-14), and the failure of the Government to agree to an additional 1 point reduction for acceptance of responsibility pursuant to USSG §3E1,1(b)(Exhibit G, pp. 14-15). Regarding the fraudulent document enhancement, counsel argued Mr. Xia should receive only a 3-point enhancement, contending Mr. Xia probably was involved with 12 to 24 fraudulent documents (Exhibit G, p.6). However, the Court found that Mr. Xia's offense involved 25 to 99 fraudulent documents and applied a 6-point enhancement pursuant to USSG § 2L2.1(b)(2)(B) (Exhibit G, pp. 11, 14). In doing so, the Court found Mr. Xia worked at the Bandrich firm for one and one-half years, from July 2011 to December 2012, and that he was involved in at least 25 applications. *Id.* at 11-13.

Counsel also argued to the Court that a sentence of incarceration offered little to no value in terms of general deterrence in the context of Mr. Xia's case (Exhibit G, pp. 20-25). In

emphasizing the personal impact incarceration would have on Mr. Xia and his family, counsel made

a general reference to the prospect of his deportation.

> The only impact it will have will be on him and his family, the human impact toll it
> will take on him and his family, in addition to the collateral consequence that he and
> his family will endure and have endured and will continue to endure now and forever
> because they're going to be in the position where there are going to be prohibitions
> on seeing each other, just practical nature of going back to China or coming here.
> It's just not going to be, it's just not going to be possible.

(Exhibit G, p. 25). Yet counsel failed to specifically inform the Court that imposing a sentence of

one year or longer could significantly impact Mr. Xia's potential immigration consequences in the

future with respect to the certainty of his deportation.  According to the record, right before

imposing sentence, the Court addressed Mr. Xia and said: "Mr. Xia, I read your letter, but I'm happy

to hear anything you like to say today."  Mr. Dratel responded for him: "I think he'd prefer to rest

on his letter, your Honor" (Exhibit G, p. 25). According to Mr. Xia, he wished to address the Court

but Mr. Dratel precluded him from doing so. "Before entering the court, I requested my lawyer to

let me make a final statement in court, but my lawyer said, 'No need.' So, when Your Honor asked

me if there was anything I wished to say, the lawyer gesticulated me to indicate to me that there is

no need to do that" (Exhibit E at p.2).[3]

---

[3]On August 12, 2014, Mr. Xia filed a timely notice of appeal, which was assigned Docket
No. 14-3104, which was later withdrawn by Order of the Second Circuit, dated Dec. 10, 2014.

**C.**    **Mr. Xia's motion to correct his sentence under 28 U.S.C. Section 2255 based on his attorney's ineffective assistance at sentencing**[4]

Ten days after he was sentenced, by letter dated August 18, 2014, Mr. Xia advised the Court he had "decided to fire [his] lawyer" and sought reconsideration of his sentence based on counsel's ineffective performance at his sentencing (Exhibit A, p.1). Mr. Xia asserted that Mr. Dratel was ineffective at sentencing for several reasons, including by failing to "inform the court of the correct law to be applied to my case." *Id.* Based on counsel's errors, Mr. Xia argued his guidelines were incorrectly calculated and his sentence was error. "Because my lawyer did not due his job properly, now I will face not only long jail time but also mandatory deportation after jail and forever separation from my wife and two young daughters" (Exhibit A, p. 2). Finally, Mr. Xia requested that his sentence be reduced "from one year and one day to ten months to avoid mandatory deportation."

> With good performance, I will be imprisoned for about 10 months any way and it makes no difference in terms of how long I will be imprisoned. But the reduction will make a huge difference to me because I will be able to avoid mandatory deportation with the ten months sentence.

Mr. Xia noted Judge Sullivan had sentenced a similarly situated Chinese defendant to 10 months' imprisonment to avoid mandatory deportation, and attached a copy of the relevant minutes (Exhibit A, pp. 5-6, 39-40).

By letter dated August 27, 2014, written nine days later, Mr. Xia provided the Court with copies of documents to support his claim that Mr. Dratel had been ineffective by failing to argue at sentencing that he had been living and working in upstate New York, from April to June of 2010,

---

[4]As noted by this Court in its Opinion and Order dated October 9, 2014 (*see* No. 12-cr-934-RA, Dkt. 348, n.1), Mr. Xia's *pro se* petition consists of three separate documents: his letter dated August 18, 2014 and attachments (Exhibit A); his letter dated August 27, 2014 and attachments (Exhibit B); and his letter dated September 28, 2014 and attachments (Exhibit C).

to contradict testimony given by Victor You (Exhibit B). Mr. Xia maintained he gave these same documents to Mr. Dratel prior to sentencing, "but he never filed them to the court nor mentioned them during sentence" (Exhibit B, p.1).

Approximately one month later, Mr. Xia wrote a six-page letter to the Court, dated September 28, 2014, with attachments, in further support of his claim that Mr. Dratel's assistance in connection with his sentencing had been ineffective (Exhibit C). The letter detailed nine separate instances of counsel's ineffectiveness.[5]  Specifically, Mr. Xia claimed counsel failed to:

1)   Respond to Government's sentencing letter dated August 3, 2014 in which the Government applied the wrong legal standard and failed to produce any evidence to prove that the 265 asylum applications filed by the Bandrich firm are fraudulent, and failed to produce any evidence to prove that the defendant is the sole coach and he coached every applicant for the asylum interview;

2)   Submit defendant's statement to rebut Victor You's testimony about his involvement in the Moslemi and Bandrich firm at a time when defendant was working in a restaurant in upstate New York;

3)   Inform the defendant about the severe consequences of the possibility of deportation before taking the guilty plea;

4)   Inform the Court about the severe consequences of mandatory deportation and failed to make the argument about the collateral consequence;

5)   Object to forfeiture;

6)   Clarify the severe misinterpretation of facts by the government both before the sentencing hearing and during the sentencing hearing;

7)   Point out that co-defendant Wen Ting Zheng, who has similar criminal conduct to defendant and is equally culpable, if not more culpable than defendant, was given a sentence of one month jail time;

---

[5]Although the instant memorandum focuses specifically on Petitioner's claim that Mr. Dratel was ineffective for failing to inform the Court of the potential deportation consequences associated with a sentence of at least one year of imprisonment, Petitioner hereby repeats and reiterates the totality of the *pro se* arguments made by Mr. Xia in his motion for 2255 relief as set forth in Exhibits A-D, and incorporates those arguments herein by reference hereto.

8

8)      Argue the minor role deduction during the sentencing hearing;

9)      Rebut the government's argument during the sentencing hearing when the government applied the wrong legal standard of proof with respect to the number of fraudulent asylum applications defendant was responsible for as stated in *United States v. Archer.*

With respect to Claim 3, Mr. Xia specified that Mr. Dratel:

failed to inform him of the severe immigration consequences of his guilty plea. The immigration consequences are extremely severe in the defendant's situation where he has been a green card holder for less than five years and the crime charged was punishable for imprisonment of five years and it is a crime of moral turpitude. Moreover, if the actual imprisonment is one year or more prison time, the crime is qualified as aggravated felony for the purpose of immigration law, and aliens convicted of aggravated felony will face mandatory deportation because no relief is available to an alien convicted of aggravated felony and the immigration judge has no discretion to stop the deportation. Moreover, once deported, the alien can never come back to the United States for the rest of his life.

(Exhibit C, pp. 1-2).

Confirming and elaborating the severe consequences faced by aliens convicted of an aggravated felony, Mr. Xia provided a 13-page attachment which included publications from the Immigration Policy Center, the research and policy arm of the American Immigration Council (Exhibit C, pp. 7-14). As indicated therein, the legal consequences of aggravated felonies "tend to be more severe on the life and rights of these non-citizens than if their conduct was considered deportable on other grounds" (Exhibit C, p. 11). As further noted, these consequences include: (1) ineligibility to stop deportation by applying for a waiver or exception to deportation, (2) inability to apply for other legal immigration status (e.g., asylum, lawful permanent residence), (3) mandatory detention until deportation, (4) less access to immigration court, (5) less access to federal appeals courts, and (6) permanent disqualification from ever returning to the U.S. for any reason, compared

to a 5 to 20-year period of ineligibility faced by most non-citizens who are deported based on other circumstances. (Exhibit C, pp. 11-14).

Regarding Claim 4, Mr. Xia specified that Mr. Dratel:

failed to inform the court before the sentencing hearing and during the hearing about the severe immigration consequences of the sentencing, especially that if the court imposes a sentence of one year or more jail time, the conviction will become aggravated felony and defendant will face mandatory deportation and will never be able to return to reunite with his family. Defendant's attorney further failed to request the court to reduce the sentence to less than one year to avoid mandatory deportation to avoid aggravated felony conviction. Defendant's attorney failed to make the argument that the collateral consequence of mandatory deportation and never being able to return to reunite with his family is much more severe punishment than the usual prison term for the defendant as compared to the U.S. citizens who face no such consequences.

(Exhibit C, p. 2).

## D.   The sentences of less than one year' imprisonment imposed on Mr. Xia's co-defendants

### 1.  Guo Qin Miao's Sentence

By letter dated September 11, 2014, the Government responded to an inquiry by the Court about the effect of the various sentences on the immigration status of Mr. Xia's co-defendant, Quo Qin Miao (Lillian) (Exhibit H).  The Government expressed its view "that the Court should not tailor its sentence to assist the defendant in avoiding any consequence that may flow from the operation of the immigration laws," but acknowledged that "the defendant may be deemed an aggravated felon on the basis of her participation in a conspiracy to violate Section 1546(a), but only if the Court imposes a sentence of at least a year" (Exhibit H, pp. 1, 2).

Thereafter, by letter dated September 12, 2014, Ms. Miao's attorney, Donald duBoulay requested and received permission, from the Court, to hire an immigration lawyer to assist him in preparing "a memorandum regarding the immigration consequences of a federal conviction and

sentence on a sentenced defendant" (Exhibit I, p. 1).  Mr. duBoulay subsequently submitted a letter,

dated September 22, 2014, informing the Court "a sentence of more than one year may catapult the

offense of conviction into the aggravated felony category making removal likely, and thus

significantly impacting the immigration removal proceedings in the future for Ms. Miao" (Exhibit

I, p. 3).

On October 7, 2014, Ms. Miao appeared for sentencing with Mr. duBoulay (Exhibit J).

Unlike Mr. Xia, Ms. Miao was not just a paralegal but also the Office Manager at the Moslemi Law

Firm, pursuant to which she "conducted intake interview and coached alien applicants on how to lie

during their asylum interviews" (PSR at ¶ 50).  The Court specifically found in addition to coaching

applicants, Ms. Miao trained other coaches, including Mr. Xia (Exhibit J, p.27).  The Court also

found there was sufficient evidence to hold Ms. Miao responsible for over 100 fraudulent asylum

applications and apply the 9-point enhancement.  She had worked for at least two and one-half years

at the Moslemi firm and in addition to her coaching, "she also assisted the co-conspirators with their

work" *Id.* at 27-28.  With regard to Ms. Miao's participation in the conspiracy, the Court

acknowledged that:

> Most significantly, Victor You testified that Ms. Miao edited his abortion stories,
> helped train Shu Feng Xia as a coach.  He also testified that he gave Ms. Miao
> materials to help applicants prepare for their asylum interviews, which she then
> posted on the wall of the firm's office so the clients can review the materials
> themselves while waiting ... He also testified that he, Ms. Miao and Feng Ling Liu
> all helped to coach Yuchang Miao, who's her nephew

.

(Exhibit J, p. 28).  The Court's determined Ms. Miao's total offense level as 18, her Criminal

History Category as I, and her guidelines range as 27 to 33 months' incarceration (Exhibit J, p. 31).

In the course of advocating that Ms. Miao receive "a significant sentence" (Exhibit J, pp. 32-

35),  the Government noted, "**I think it's clear that [Ms. Miao] is more culpable than Shu Feng**

11

**Xia**, who your Honor sentenced to a year and a day.  She worked at the law firm for at least a year more than he did.  She participated in training him, and she had a more expansive role, and she worked both as a coach office manager and a paralegal" (Exhibit J, p. 32)(emphasis supplied).  The Government added that, even being arrested, Ms. Miao continued to associate with the firm, and that she "made misrepresentations to the Court in her submissions" (Exhibit J, pp. 32-33).

Mr. duBoulay's responding arguments included informing the Court  about the immigration consequences to Ms. Miao resulting from the imposition of a sentence of more than one year in prison.  "If she gets sentenced to more than one year, she becomes an aggravated felon.  And she will definitely be deported with no kind of relief whatsoever" (Exhibit J, p. 40).  The Court then asked Mr. duBoulay if he was asking that Ms. Miao receive a sentence of less than one year, "even if that means she'll be incarcerated for longer, meaning that she would not have the benefit of good time that she might if she were to receive a year and a day?"*Id.* at 40-41. Mr. duBoulay answered, "That's correct, Judge.  If it's said to be a year, it makes her an aggravated felon.  If it's less than a year, she'll be put in removal proceedings" *Id.* at 41.  Mr. duBoulay later reiterated, "Anything over a year makes it an aggravated felony.  There may not be a defense anyway, but that clearly puts her in a different category whatsoever." *Id.*

After defense counsel concluded his remarks, Ms. Miao and her son, Liang Yu Fu, personally addressed the Court (Exhibit J, pp. 44-48).  In addition to expressing her remorse and deep regret for her actions, and begging for leniency, Ms. Miao expressed her fear of deportation to China and never again seeing her family.  "What happened if I got sent back to China; I would never be able to come back.  And my husband and my son, they are not willing to go back to live in China.  My whole family respect this country.  If we got separated forever, that death sentence

12

to me.  I would not be able to see my husband and my son.  It would be better to die than to live.

I sincerely hope your Honor don't let us separate" (Exhibit J, pp.45-46).  Her son's remarks to the

Court included his request: "Will you please make exception to render a sentence that will not

separate my mother from our family" (Exhibit J, pp.47-48).

Notwithstanding the lower end of Ms. Miao's guidelines was 27 months, the Court sentenced

her to 11 months' imprisonment.  Prior to doing so, among the other factors considered including

Ms. Miao's health concerns, the Court noted, "I've considered the potential immigration

consequences on Ms. Miao." (Exhibit J, pp. 49-51).  The Court clarified its authority for doing so:

> In determining what sentence is sufficient, but not greater than necessary to serve the needs of justice, a **district court may take into account the uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant and her family**.  I'm quoting from the *Thavaraja* case, 740 F.3d at 262 to 263, decided by the Second Circuit in January.  **And as I said, I've done that in this case.**

> Although it may well be, as the government observes, that Ms. Miao will face deportation no matter what sentence is imposed today, and that's beyond my control. Deportation will indeed have grave consequences, particularly for her son who goes to college upstate, her husband.  And although those consequences cannot be known with certainty today, **I am mindful of the possible effect of receiving a sentence of over one year in prison**.

> I don't think there's a need for Ms. Miao to be deported; but, again, that's not within my control.  **But it is within my control** -- and the Court of Appeals has indicated it is appropriate -- **for me to consider that and accordingly, consider what a one-year sentence may do.**

(Exhibit J, p. 51)(emphasis supplied).

### 2. Riu Yang's Sentence

On <u>October 28, 2014</u>, Riu Yang appeared for sentencing with her attorney, Mr. Stanislao German (Exhibit K). The Court determined that Ms. Yang's offense involved 25 to 99 documents and applied a 6-point enhancement. It found Ms. Yang's total offense level as 17, her criminal history category as I, and her advisory sentencing guidelines as 24 to 30 months' imprisonment (Exhibit K, p. 30). Unlike Mr. Xia and his co-defendants Ms. Miao and Wen Ting Zheng, Ms. Yang had been convicted after trial and did not receive any reductions in the calculation of her advisory sentencing guidelines for acceptance of responsibility. In urging a guideline sentence be imposed, the Government emphasized that "although Ms. Yang was not the leader of the conspiracy, the government feels she played a very important part. She is a person who dealt with the applicants on a daily basis" (Exhibit K, pp. 30-31). The Court asked the Government, "**Where do you see [Yang] in terms of culpability, particularly when you compare her to Lillian Miao or Shu Feng Xia?" The Government answered, "I think she compares equally to them**. I think Kevin, as you know, his job was to coach so, obviously, he focused on working with the clients on that level of the interview. I think it was clear from the testimony that Ms. Yang's job was to actually help them get the application ready." *Id.* at 31-32 (emphasis supplied).

Mr. German recounted Ms. Yang's personal and family history, and mitigating factors, and asked the Court "to show mercy to [Yang] in balancing all these factors and give her a non-BOP sentence." (Exhibit K, pp. 33-40). Ms. Yang had come to the U.S. to attend an MBA program at Arkansas State, but stopped attending after she learning she was pregnant. *Id.* at 35. Ms. Yang then addressed the Court in her own behalf before the imposition of her sentence. *Id.* at 40-42. In expressing her remorse, deep regret and request for leniency, Ms. Yang expressed her fear for her

husband, three-year-old daughter, and unborn daughter if she was incarcerated or deported. "I plead with your Honor to give my family another chance that we can stay together." *Id.* at 42.

The Court noted that Ms. Yang "played an important role in the fraudulent scheme, and that role was to help people lie to this country" (Exhibit K, p.42). Notwithstanding the lower end of her guidelines was 24 months, the Court sentenced Ms. Yang to three months in prison, followed by a three-year term of supervised release, based on a number of factors, including that Yang was "due to have a baby in less than a month and that there are issues about who will care for her two children during a long period of incarceration." *Id.* at 44. The Court also indicated it had considered Yang's possible immigration consequences.

> I will note that in the Thavaraja case decided by the circuit in January, the court stated that: "In determining what sentence is 'sufficient' but not greater than necessary,' to serve the needs of justice, ... a District Court may take into account the uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant and [her] family.

(Exhibit K, pp. 46-47). The Court further noted that although a sentence of supervised release "should not normally be imposed for someone who is going to be deported," she, nonetheless, was imposing it because Ms. Yang's children were U.S. citizens, and the probation department noted that "deportation may not be imminent." *Id.* at 47.

### 3. Wen Ting Zheng's Sentence

On June 5, 2014, Wen Ting Zheng was the first of Mr. Xia's co-defendants to be sentenced (Exhibit L), and the only one sentenced before him. Like Ms. Yang, Ms. Zheng was an educated person. She had received an LLM degree from Case Western Reserve Law School, and sought to be a U.S. lawyer (Exhibit L, p.17). Her role in the asylum fraud scheme was both as paralegal and storyteller at Moslemi and Associates. (PSR at ¶'¶' 28-33) *Id.* at 5-6. As she  was in charge of

15

writing false stories, the Government considered Zheng's conduct, "unquestionably at the heart of the whole reason we're here today and the basis of the investigation that the FBI conducted." *Id.*

At sentencing, Zheng acknowledged being personally responsible for "70 to 80 cases in which she drafted false stories for the [law] firm's clients in 2012" (Exhibit L, p.16).  Prior to the imposition of her sentence, Zheng addressed the Court to express her deep remorse and fears. *Id.* at 13-15.The Court found Zheng's offense level as 14, her criminal history level as I, and her guidelines range as 15 to 21 months' imprisonment.  The Court sentenced Zheng to one month of incarceration. *Id.* at 5, 15-18.  The potential deportation consequences of sentencing her to one year or more in prison  were not discussed, and appear to have no bearing based on the sentence imposed.

**E.**     **The renewal of Mr. Xia's *pro se* 2255 motion**

By Letter Motion, dated <u>December 11, 2014</u>, Mr. Xia renewed his 2255 motion (Exhibit D).[6]

In his Letter Motion, Mr. Xia informed the Court that he was facing mandatory deportation:

> I received a document from the immigration authorities telling me that there is a deportation order against me because my sentence is over one year and is aggravated felony. I am facing mandatory deportation to China after my sentence is fully served on August 23, 2015 and I can never return to the United States. . .My wife and my two daughters completely count on me for support.  If I am sent back to China by the immigration authorities, my poor family will become even worse. . . My daughters and my wife are my whole life.  If I am forced to separate from my family, my family is in the United States and cannot often come to China to see me and I cannot come to the United States to live with them, the second half of my life will be very lonely and a very hard life to live.

(Exhibit D, p. 2).

Mr. Xia further reminded the Court that:

---

[6]On <u>October 9, 2014</u>, Mr. Xia's initial 2255 motion, No. 14-cv-08284-RA, was dismissed without prejudice to refile after his direct appeal was decided. *See* No. 12-cr-00934-RA, Dkt. 348, No. 14-cv-08284-RA, Dkt.2. In his Letter Motion, dated December 11, 2014, Mr. Xia indicated he had withdrawn his appeal (because he already would have been deported by the time it was decided), and was renewing his 2255 motion.

Because of my lawyer's mistake, when Your Honor sentenced me, my lawyer failed to explain in detail the severe consequence of mandatory deportation to China if my sentence is more than one year.  As a result the court did not consider the mandatory deportation consequence of the sentence. In sentencing my co-defendants Rui Yang and Guo Qin Miao, Your Honor said that their criminal conduct is more severe then me, but because of the deportation consequence caused by the sentence, Your Honor sentenced them leniently and their sentences are less than one year.   But in sentencing me, the court did not consider the mandatory deportation consequence caused by the sentence and sentenced me for more than one year.  I beg Your Honor through this 2255 motion to reduce my sentence so that I can stay in the United States and live with my family and avoid separation from my family.   *Id.*

## LEGAL ARGUMENT

### POINT I

**MR. XIA'S PETITION UNDER 28 U.S.C. § 2255 SHOULD BE GRANTED DUE TO THE INEFFECTIVE ASSISTANCE OF HIS COUNSEL AT SENTENCING**

It is well recognized that the Sixth Amendment of the United States Constitution entitles an accused in a criminal trial to the "effective assistance" of counsel.  *Strickland v. Washington,* 466 U.S. 668, 686 (1984), citing *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970).  According to *Strickland*, to successfully establish that attorney assistance was deficient, a criminal defendant must make a two-prong showing demonstrating both that: (1) his attorney's performance, "fell below an objective standard of reasonableness" (*Id.* at 688); and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.*

In the instant case, as more fully discussed below, Mr. Dratel's failures to request a sentence of less than one year and to inform the Court of the specific immigration consequences Mr. Xia would suffer from a sentence of one year or more were objectively unreasonable.   Counsel's

17

omissions resulted in Mr. Xia's offense being classified as an aggravated felony, subjecting him to mandatory deportation and other more severe immigration consequences (Exhibit C, p.11). Moreover, given that the Court later learned of and considered these very same immigration consequences when sentencing Mr. Xia's similarly situated co-defendants, who were as culpable if not more culpable than he was, a "reasonable probability" exists that, but for his attorney's unprofessional errors, he, too, would have received a sentence of less than one year. Accordingly, it is respectfully submitted that Mr. Xia's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence should be granted.

A.     **Counsel's Failures to Understand the Immigration Consequences of Mr. Xia's Conviction and to Inform the Sentencing Court of These Consequences Constitute Ineffective Assistance of Counsel**

Mr. Xia maintains that, at sentencing, his attorney was ineffective because he failed both to request a sentence of under one year, and to inform the Court of the immigration consequences of a sentence of one year or more. Absent the opportunity to consider this information, the Court sentenced Mr. Xia to one year and a day in prison. This two-day difference was extremely prejudicial to Mr. Xia because, for immigration law purposes, an offense with a sentence of one year or more constitutes an "aggravated felony," pursuant to which is a criminal defendant is subject, among other consequences, to mandatory deportation and is permanently barred from ever returning to the United States. *See* 8 U.S.C. § 1101(a)(43)(P)(U)(violation of Section 1546(a), and conspiracy to commit the same, is aggravated felony if the term of imprisonment is at least 12 months). Indeed, Mr. Xia reports that immigration authorities already have informed him that based on the sentence imposed, there is a deportation order against him (Exhibit D, p.2). It has long been understood that

18

the severity of deportation is "the equivalent of banishment or exile." *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010), quoting *Delgadillo v. Carmichael*, 332 U.S. 388, 390-91 (1947).

As noted recently in *United States v. Worlumarti*, 13 CV 6202, 2014 WL 1783071 at *5 (E.D.N.Y. May 5, 2014), the Supreme Court in *Padilla* has acknowledged that, "the Sixth Amendment guarantees [to a defendant] a criminal defense lawyer with an understanding of the immigration consequences of criminal law." Specifically, the *Padilla* Court recognized that, "constitutionally competent counsel would have advised [the defendant] that his conviction for drug distribution made him subject to automatic deportation." *Padilla*, 559 U.S. at 361. In circumstances strikingly similar to those in Mr. Xia's case, the defendant in *Worlumarti* claimed his attorney was ineffective at sentencing for failing to request a one-day difference in his one-year sentence, so as to avoid having his offense classified as an aggravated felony. Counsel's inexcusable failure rendered Mr. Worlumarti--a Nigerian citizen who fled Nigeria to avoid political persecution--*per se* ineligible for asylum in the United States.

Here, as in *Worlumarti*, Mr. Xia's attorney failed to request a lesser sentence or to inform the court that a sentence of one year or more would result in his offense being considered an aggravated felony and subject him to mandatory deportation. "It is our responsibility under the Constitution to ensure that no criminal defendant--whether a citizen or not--is left to the "mercies of incompetent counsel" *Padilla* 559 U.S. at 373, quoting, *McMann v. Richardson*, 397 U.S.759, 771 (1970). Thus, this Court should find, as the found court in *Worlumarti,* that counsel's omissions at Mr. Xia's sentencing provide the basis for concluding his performance was ineffective under *Padilla*.

19

Moreover, long before *Padilla* was decided, numerous federal courts have held that *Strickland* required counsel to understand immigration consequences, and to advocate accordingly at sentencing in order to provide the judge with the ability to exercise discretion to ameliorate those consequences. While the ineffective assistance inquiry is fact-specific (*see Strickland*, 466 U.S. at 688), it is apparent that a criminal defense lawyer is obligated to provide a sentencing court with the ability to exercise discretion, with a full and complete understanding of relevant factual and legal issues, including issues related to immigration. *See Shushansky v. United States,* 93 CV 5632, 1994 WL 716228 at *5 (E.D.N.Y. Dec. 21, 1994). In *Shushansky*, the court found the defendant had received the ineffective assistance of counsel by his attorney's failure to properly pursue a Judicial Recommendation Against Deportation ("JRAD") at sentencing.[7] The court noted that, "Shushansky's attorney's failure ... affected the actual sentencing process **by impeding the judge's obligation to exercise sentencing discretion with full knowledge of all relevant circumstances**." (emphasis supplied).

The Fifth Circuit's decision in *United States v. Castro*, 26 F.3d 557 (5th Cir. 1994), further demonstrates the obligation of criminal defense counsel to understand immigration consequences at sentencing in order to provide effective representation. Mr. Castro, a Honduran citizen, had been deported after pleading guilty to a conspiracy charge for which he received a four-year sentence. In a motion for a writ of error coram nobis, Castro maintained that at the time of his sentencing, his two attorneys were ineffective because they failed to inform him about the availability of a JRAD, or to request a JRAD from the sentencing court. *Id.* at 558-59. Further, as the *Castro* court found,

---

[7]At the time Shushansky was sentenced, pursuant to 8 U.S.C. § 1251(b), a district court was permitted, in its discretion, to make a Judicial Recommendation Against Deportation. However, Congress repealed this statute on November 29, 1990. *Shushansky*, 1994 WL 716228 at *2 & 3.

"the sentencing judge was apparently unaware of the availability of JRAD relief." *Id.* at 562.  In reviewing the denial of his motion on appeal, the Fifth Circuit acknowledged that, "A deprivation of an opportunity to have a sentencing court exercise its discretion in a defendant's favor can constitute ineffective assistance of counsel." *Id.* at 560 citing *United States v. Golden*, 854 F.2d 31, 32 (3rd Cir. 1988)(holding that "ineffective assistance of counsel may be established where defense counsel failed timely to file a motion for reduction of sentence"). Such a deprivation occurred in *Burley v. Cabana*, 818 F.2d 414 (5th Cir. 1987), when the sentencing judge, without being made aware of Mr. Burley's sentencing options, imposed a life sentence. The Fifth Circuit held that "counsel's failure to inform the state trial court of sentencing alternatives constituted ineffective assistance of counsel." *Id.* at 415. *See also United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988)(holding there is a "due process right to a fair sentencing procedure which includes the right to be sentenced on the basis of accurate information").

In *Mandarino v. Ashcroft*, 290 F.Supp.2d 253, 261 (D.Conn. 2002), the court found ineffective assistance under circumstances remarkably similar to those here.  Mr. Mandarino, an Italian national and lawful permanent resident of the U.S., had been convicted in 1992 of conspiracy to import more than five kilograms of cocaine.  He was sentenced to nine years' imprisonment, followed by five years' supervised release.  Similar to Mr. Xia's case, although the immigration consequences of Mandarino's conviction were discussed at sentencing, defense counsel apparently was unaware, and did not inform the court, that the proposed sentence would subject his client to mandatory deportation as an aggravated felon pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii), and bar him from seeking a § 212 (c) waiver.  As his

21

sentence drew to a close, Mandarino was placed in deportation proceedings and ordered removed to Italy.

In his motion to vacate sentence pursuant to 28 U.S.C. § 2255, Mandarino argued, *inter alia*, "that counsel was ineffective for failing to inform the court as to the deportation consequences of a sentence of five years." *Mandarino*, 290 F.Supp.2d at 259. In considering this claim, the court held that *Strickland* applied to claims that the attorney had failed to understand and inform the sentencing court of immigration consequences. "'[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' This duty applies to inquiries relevant to sentencing." *Id.* at 261, quoting *Strickland* at 691, citing *Williams v. Taylor*, 529 U.S. 392, 395 (2000). The court found that counsel's performance at sentencing constituted ineffective assistance under the first prong of *Strickland*, and held that:

> A defense counsel need not become an expert in immigration law to represent a criminal defendant at sentencing. He is required, however, to conduct 'reasonable investigations' into law having some bearing on the sentence ultimately imposed. In the present case, a sentence in excess of five years precluded any attempt by petitioner to seek a waiver from an order of deportation. Consideration of this factor was both relevant and significant, given the sentencing court's inquiries in both the plea and sentencing proceedings. The failure to raise the issue cannot be characterized as a strategic omission as its inclusion at best would have provided a basis for departure and at worst would have not been considered. In no event could petitioner have received a greater sentence for his counsel's discussion of potential immigration repercussions of a sentence.

*Mandarino*, 290 F.Supp.2d at 262,quoting *Strickland* 466 U.S. at 691, citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

The foregoing cases plainly support Mr. Xia's position that his attorney was obligated under *Strickland*, as well as under *Padilla*, to "accurately convey information regarding immigration consequences" during the sentencing stage so as to provide "an opportunity to have the sentencing

court exercise its discretion in [the] defendant's favor."  Consequently, Mr. Dratel's failure to do so

constitutes ineffective assistance of counsel.  *See Castro*, 26 F.3d at 560, *Worlumarti,* 2014 WL

1783071 at *5*, Mandarino*, 290 F.Supp.2d at 262, *Shushansky*, 1994 WL 716228 at *5.

**B.      Mr. Xia Was Prejudiced by His Attorney's Deficient Representation at Sentencing As There Exists A Reasonable Probability That, But for Counsel's Unprofessional Errors, Mr. Xia Would Have Received a Lesser Sentence**

After finding the first prong of *Strickland* satisfied, the *Mandarino* court addressed the

question of prejudice. In doing so, it considered whether "but for counsel's unprofessional errors,

the outcome would have been different. The question thus becomes had counsel moved for a

downward departure, would petitioner have received a lesser sentence " *Mandarino*, 290 F.Supp.2d

at 262, citing *Strickland,* 466 U.S. at 694.  In finding that *Strickland*'s second prong also had been

met, the court held:

> Had this Court known that the sentence imposed ... would actually play a role in
> breaking up that family unit and the concomitant detriment to the family unit
> resulting from an unavoidable order of deportation, it would have factored this
> consideration into the overall mix. . . There was no intention that the sentence
> deprive petitioner of the opportunity of seeking a § 212 (c) waiver...
>
> Counsel admittedly was admittedly unfamiliar with the relevant immigration law.
> If provided an accurate statement in conjunction with petitioner's family ties and
> employment history, this Court would have imposed a lesser sentence more in line
> with the codefendant ... The failure to move for a downward departure, in addition
> to the departure for prosecutorial cooperation, or to correct the sentence to reflect the
> bar to § 212 (c) relief if a sentence in excess of five years were imposed therefore
> constitutes ineffective assistance of counsel.

*Mandarino,* 290 F.Supp.2d at 264-65.

As in *Mandarino,* based on the record in this case, the conclusion seems inescapable that

counsel provided ineffective assistance to Mr. Xia at sentencing, and that Mr. Xia was prejudiced

by counsel's errors. For had Mr. Dratel informed the Court that the immigration consequences of

the proposed sentence would subject Mr. Xia to mandatory deportation as an aggravated felon, and requested a lesser sentence to avoid these consequences -- even just two days less-- it is reasonably probable that the Court would have imposed a reduced sentence.

While there appears evidence that Mr. Xia asked Mr. Dratel whether a sentence in excess of 12 months would subject him to automatic deportation, and that Mr. Dratel promised to arrange for Mr. Xia to consult with an immigration lawyer (Exhibit E, p.1), Mr. Xia maintains that this was not done, and the record does not indicate otherwise.  Neither does the record demonstrate that counsel ever researched the impact of a sentence of 12 months or more on Mr. Xia's future immigration consequences, and there is certainly no disputing that counsel did not alert the Court to this issue. Furthermore, it appears that counsel may have prevented Mr. Xia from making this argument in his own behalf (Exhibit E).  Therefore, as in *Mandarino* and *Worlumarti*, the impact of the sentence of 12 months or more was a highly relevant consideration that competent counsel was obligated to take into account.  However, counsel offered no guidance to the sentencing court on this issue either in his Sentencing Letter or at the sentencing hearing (Exhibits F and G).

In contrast, it is clear what effective counsel would have done at sentencing, had he known of the impact of a sentence of one year or more.  Mr. duBoulay's actions in representing Mr. Xia's Guo Qin Miao demonstrate just that.  Recognizing the critical nature of this consideration, Mr. duBoulay sought permission from the Court "to permit the expenditure of CJA funds to allow the appointment of an attorney who specializes in Immigration matters to assist [him] in the preparation of a memorandum regarding the immigration consequences of a federal conviction and sentence on a sentenced defendant" (Exhibit I, p.1).  Then, after conferring with immigration counsel, Mr. duBoulay submitted a memorandum to the Court, in advance of his client's sentencing, to alert the

Court of the potential immigration consequences related to sentencing, including that imposing a sentence of more than 12 months could "catapult the offense of conviction into the aggravated felony category" ... and thus significantly impact the immigration removal proceedings in the future" for his client (Exhibit I, p.3).   Thereafter, Mr. duBoulay reiterated these concerns to the Court at Ms. Miao's sentencing.   "If she gets sentenced to more than one year, she becomes an aggravated felon. And she will definitely be deported with no kind of relief whatsoever (Exhibit J, p.40).   Mr. duBoulay also allowed both Ms. Miao, and her son, to address the Court rand relate these same concerns. *Id.* at 44-48.

After being so advised, despite her acknowledged greater overall culpability in the immigration asylum conspiracy, the Court sentenced Ms. Miao to 11 months' incarceration compared to the one year and a day sentence imposed on Mr. Xia.   As both a coach office manager and paralegal, Ms. Miao's recommended guidelines were significantly higher than his (27 to 33 months vs. 18 to 24 months), In imposing the eleven-month sentence, the Court expressly stated that it had "take[n] into account the uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant and her family" (Exhibit J., p.51).   The Court further indicated in sentencing Ms. Miao, it was "mindful of the possible effect of receiving a sentence of over one year in prison," and appropriately "consider[ed] what a one-year sentence may do." *Id.* citing *United States v. Thavaraja*, 740 F.3d 253, 262-263 (2d Cir. 2014).

The Court again was mindful of the possible immigration consequences of imposing a sentence of over one year in prison, when sentencing Riu Yang, who was similarly culpable to Mr. Xia with respect to her role in the conspiracy.   Like Miao, Yang's sentencing guidelines were higher than Xia's (24 to 30 months vs. 18 to 24 months). While the fact that she was pregnant and about

25

to give birth was undoubtedly an important consideration in sentencing her to three months in prison (nine months and one day less than Mr. Xia), the Court was clear that it had also considered her possible immigration consequences by "tak[ing] into account the uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant and [her] family." Exhibit K, pp. 46-47. After imposing the reduced sentence, the Court mentioned it had also imposed a three-year term of supervised release, following Yang's imprisonment, based on advice from the probation department that Yang's "deportation may not be imminent" because she had children who were U.S. citizens. *Id.* at 47. Notably, Mr. Xia does, too.

In light of the Court's clear indication that it considered the very same immigration consequences in sentencing two of Mr. Xia's co-defendants, and in doing so sentenced them to lesser sentences, in part, to avoid classifying their offenses as aggravated felonies, it is reasonably probable that the Court would have considered this immigration consequence and sentenced Mr. Xia to a term of imprisonment of less than one year had Mr. Dratel made this request or otherwise alerted the Court to this circumstance prior to the imposition of sentence. Thus, it is clear that Mr. Xia was prejudiced by his counsel's failure to request a *de minimus* reduction of his sentence.

Moreover, there is no basis to claim that counsel's failure to request a two-day reduction in Mr. Xia's one year and a day sentence was, or could have been, a strategic choice. *See Mandarino*, 290 F.Supp.2d at 262, *Shushansky,* 1994 WL 716228 *3. There was simply no reason not to inform the Court that a two-day reduction would have potentially avoided mandatory deportation from the classification of his offense as an aggravated felony, and preserved Mr. Xia's potential eligibility for relief from removal. Indeed, counsel had vigorously and successfully argued a three-point reduction in the applicable fraudulent document enhancement in order to lower Mr. Xia's sentencing

guidelines. There was nothing preventing him from also arguing, and explaining why, the sentence imposed should be less than one year.  Accordingly, it is beyond dispute that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,  466 U.S. at 692.

In sum, under standards clearly articulated by courts in this Circuit and elsewhere, there is simply no denying that Mr. Xia's counsel was ineffective during sentencing.  His failures included, at a minimum: (i) failing to conduct reasonable investigations relating to immigration consequences, despite their clear bearing on Mr. Xia's sentence, the promise made to Mr. Xia that this investigation would be performed, and the potential that alerting the Court to such consequences could have led to a reduction of Mr. Xia's sentence; and (ii) failing to provide the sentencing court with critical information about the immigration consequences of a sentence of one year or more, and thus significantly compromising the court's ability to "exercise [sentencing] discretion with full and accurate knowledge of the relevant facts." *Shushansky,* 1994 WL 716228 *5.  As to prejudice, as demonstrated above, even minimal investigation and advocacy on counsel's part would, in all likelihood, have led to a dramatically different result.  Simply understanding and alerting the Court to the immigration consequences of Mr. Xia's sentence of one year and a day likely would have led the Court to impose a reduced sentence of, at least, two days.

## POINT II

### AS THE SENTENCE OF ONE YEAR AND A DAY IMPOSED ON MR. XIA WAS BASED ON ERROR ARISING FROM COUNSEL'S OMISSIONS AT SENTENCE, THIS COURT HAS THE AUTHORITY TO VACATE AND RESENTENCE MR. XIA

As recognized in *Shushansky v. United States*, No. 93 CV 5632, 1994 WL 716228 at *5 (E.D.N.Y. 1994), this Court has the authority to resentence Mr. Xia, "even though the sentencing judge had considerable or full discretion in determining the original sentence, where that judge did not exercise that discretion with full and accurate knowledge" (referring for support to *Rizzo v. United States,* 821 F.2d 1271, 1274 (7th Cir. 1987); *Burley v. Cabana*, 818 F.2d 414 (5th Cir. 1987); *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988); *Baesho v. United States*, 660 F.Supp. 149 (E.D.N.Y. 1987).  As discussed at length in Point I, when it imposed the sentence of one year and a day, the Court did so without full and accurate knowledge of Mr. Xia's potential immigration consequences.  Specifically, the Court was not advised that a sentence of one year or more would result in Mr. Xia's offense being considered an aggravated felony and subject him, among other consequences, to mandatory deportation.  Moreover, it appears the Court was not independently aware of this factor at that time. Thus, absent this critical information, the Court was foreclosed from properly exercising its discretion when sentencing Mr. Xia.  Accordingly, as the Court now has a full and accurate understanding of the immigration consequences resulting from a sentence of one year or more, it is respectfully submitted that the Court, *sua sponte,* may resentence Mr. Xia to a sentence  which takes into consideration these potential consequences.

Additionally, Rule 36 of the Federal Rules of Criminal Procedure provides further authority for the Court to resentence Mr. Xia.  Rule 36 states: "After given any notice it considers appropriate, **the court may at any time** correct a clerical error in a judgment, order, or other part of the record,

28

or **correct an error in the record arising from oversight or omission**." (emphasis supplied).  Due to counsel's inexcusable failure to provide the court with accurate information regarding the future immigration consequences arising from Mr. Xia's sentence, arguably, the sentence of one year and a day imposed by the Court was the result of oversight or omission.  Thus, it is respectfully submitted that a Rule 36 motion offers an alternative means for the Court to correct the "error" which resulted from sentencing Mr. Xia in the absence of full and accurate knowledge.  *See United States v. Walker*, 17 F.R.D. 5, 7 (S.D.N.Y. 1955), *see also Clark v. Memolo*, 174 F.2d 978, 981-82 (U.S.App.D.C. 1949).

**CONCLUSION**

For the reasons set forth herein, it is respectfully requested that this Court grant Petitioner's *pro se* Motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, and for such other, further and different relief as requested herein, or as this Court may deem just, equitable and proper.

Dated: Great Neck, New York
       April 24, 2015

                                           Respectfully submitted,


                                                /s/
                                           _____
                                           Randa D. Maher, Esq.


cc:    Counsel of record (by email and ECF)
       Mr. Shu Feng Xia (by regular mail)